American Insurance Company v. Neiberger.

---

AMERICAN INSURANCE COMPANY, *Appellant*, v. NEIBERGER.

1.  **Proof of Custom**: INSURANCE.   Proof that there was a custom observed by ten or twelve insurance companies to insert a particular clause in their policies; *Held*, not admissible to establish a similar custom on the part of another company.

2.  **Custom**: INSURANCE: EVIDENCE.   Where the insured refused to accept the policy issued to him and declined to pay his premium note on the sole ground that the policy did not contain a clause which he alleged the company's agent had agreed it should contain; *Held*, that when sued upon the note he could not give evidence of a custom on the part of insurance companies to insert such a clause in their policies.

3.  **Insurance**: APPLICATION: REJECTION OF POLICY TENDERED: PAROL EVIDENCE.   Where the application for insurance does not attempt to set forth all the provisions to be contained in the policy, and the agent of the company, with or without authority, represents that it will contain certain stipulations, which are not unlawful, the applicant may refuse to accept the policy, when issued, if it does not contain them; but he must make his election and notify the company without delay; otherwise he will be deemed to have accepted it.   In such case, when sued upon his premium note he may make parol proof of the agent's representations.

*Appeal from Henry Circuit Court.*—Hon. F. P. Wright, Judge.

Reversed.

*M. A. Fyke* for appellant.

The note on its face is payable absolutely in four an-nual installments. It was incompetent to introduce any parol evidence to vary or control the written promise. *Wright v. Moore,* 9 Gray 337; *Cunningham v. Wardwell,* 12 Me. 466; *Adams v. Wilson,* 12 Metc. 138; *Allen v. Furbish,* 4 Gray 504; *Isaacs v. Elkins,* 11 Vt. 679; *Henderson v. Thompson,* 52 Ga. 149. The written application of defend-ant was for insurance for the term of five years. This application was signed at the time the note was given. No parol evidence can be received as to any agreement made prior to or contemporaneous with the execution of the note and application. *Coats v. Swindle,* 55 Mo. 31; *Helmrichs v. Gehrke,* 56 Mo. 79; *Jones v. Shaw,* 67 Mo. 668. The court erred in admitting evidence as to the usual contents of insurance policies. The application of defendant was for five years' insurance, and his note was given for the premium for four years, he having paid one installment in cash. And, again, if defendant relied on a custom it must be general and well known. There is no evidence of any such custom in this case.

*Robt. C. McBeth* for respondent.

Defendant having, by his agreement with the agent, reserved the right to cancel the policy at the end of a year, had a right to refuse to receive the policy issued because it did not so provide. *Ocean Ins. Co. v. Carrington,* 3 Conn. 357; May on Ins., § 52. Having rejected it, the consider-ation of the premium note failed. May on Ins., § 555; *Boland v. Whitman,* 33 Ind. 64. The testimony clearly shows that the terms of the policy as issued are extraor-

dinary and unusual in not granting to insured the right to cancel, and the instructions of the court are supported by the testimony and were not prejudicial to the rights of ap pellant. The court did not err in admitting parol testimony as to the usual stipulations in such policies and as to the agreement made relative to the insurance at the time of executing the note and application; for it is only through such testimony that a court, in a case like this, can arrive at its true inwardness and be able to gauge and determine the rights of the parties.

HOUGH, J.—On the 25th day of January, 1875, the plaintiff issued to the defendant a policy of insurance against loss by fire, for the period of five years from the 15th day of January, 1875, in pursuance of a written application previously made by him to an agent of the plaintiff, then in Henry county, where the property insured was situated. The defendant paid the premium for one year in cash, and gave his note for the premium for the remaining four years, payable in four annual installments of $12 each. This suit was instituted on February 3rd, 1877, to recover the two installments then due. It was admitted by the defendant that the plaintiff was duly authorized by the Insurance Department to do business in this State.

The defendant's testimony appears in the transcript in the following form: The installment note sued on was given to an agent of plaintiff for insurance on his farmhouse and barn and contents for five years. The agent came around soliciting insurance, and defendant and the agent made an agreement as to rates and time, and the agent made out an application for insurance which defendant signed and gave to the agent, and has not since seen it. The agent took this note and application, but did not at that time make out or deliver any policy of insurance. As defendant understood, the application and note were sent to the home office for the policy to be made out. In the course of time, shortly after the making of the appli-

cation and giving the note, defendant received a policy by mail from the company at Chicago, which, when he read, he at once refused, and took it to Esq. Ellis to have it cancelled and sent back to the company. Defendant says he refused to accept the policy as made out by the company, and notified them of his refusal without any delay; *that he refused the policy because it was not in accordance with his agreement with the agent;* that it contained conditions and provisions which were not set out in the application nor made known by the agent, and when the policy came he refused to receive it because it was different from the agreement made with the agent; that defendant never paid the note nor any part of it, but always refused to do so for the reason that he regarded the policy as void; that he never regarded that he had any insurance, and that he refused to pay the note; *that the agent promised him when the application was made, that he would get a policy containing a clause providing for cancellation by assured;* that when the application was made he paid for one year's insurance in cash, and that as soon as he could, conveniently, after the arrival of the policy, and he had read it, he brought it down to Esq. Ellis to have it cancelled; that he wrote out and signed the cancellation and sent the policy to Chicago to the company, and they sent it back here again. Esq. Ellis sent the policy for affiant. This cancellation was before the expiration of the time for which cash had been paid for insurance. I think it was along about the 1st of April that the policy came from Chicago. The application was made about the middle of February, and the agent wanted to date it back to January. I think it was in May that I sent it back, about the 10th. I went to Ellis as he was an insurance agent. *My understanding with the agent was that if I lost the amount named in the policy to be sent me, I would get it.* He did not inform me that he would pay only two-thirds of the cash value of the property if lost, nor did he say anything to me about the right of the company to cancel the policy, and not give me the right to do so. Nor do

I recollect that he said the policy would be void if the notes were not paid when due. I do not think anything was said about that with the agent. I did not know such conditions were in the policy until the policy came.

Ques.—What particular condition did the agent represent that the policy should contain, which was not contained in it, that caused you to refuse to accept the policy?

Ans.—A clause giving me the right to cancel at the end of the year.

Ques.—When you returned the policy to the company did you inform them what your reason was for returning it?

Ans.—I do not know what Ellis did write. I made the statement to him, and he did the writing.

Ques.—Your application was a written one, was it not?

Ans.—Yes; all the statements and conversations with the agent were made at the time of signing the application.

The plaintiff objected to that portion of the defendant's evidence which is in italics, on the ground that he could not be permitted to show any agreement with the agent other than that contained in the written application.

Ellis, who returned the policy, testified that at the request of the defendant, and without other authority, he indorsed on the face of the policy the words, "Cancelled May 10th, 1875," and returned it by mail to the plaintiff. This witness further testified that Neiberger told him that the reason he wanted to return the policy was, because he had heard that the company was insolvent, and a forged note had been sent out in favor of the company, against him, and that he did not want to do business with that kind of a company.

The date at which the defendant received the policy in question, is not shown by the record. The written application, which was offered in evidence, was for insurance for the period of five years, for a given sum, which is stated not to be in excess of two-thirds of the cash value of the premises insured. An insurance agent, who stated that he

represented ten or twelve companies, testified, against the objections of the plaintiff, that in the applications generally used, nothing was said about cancellation, but that the policies issued by all the companies he represented, gave the insured the right to cancel at any time, and reserved the same right to themselves. There was no testimony as to the custom of the plaintiff in regard to the insertion of such a provision in its policies, and there is nothing in the record to indicate that the policy issued was in any respect different from those ordinarily issued by the plaintiff. Judgment was rendered for the defendant, and the plaintiff has appealed.

We are of opinion that the testimony offered to show that it was the custom of ten or twelve companies repre- 1. PROOF OF CUS- sented by the witness to insert in their poli- TOM: insurance. cies provisions permitting the insured to cancel the same at any time, was inadmissible for the purpose of establishing a similar custom on the part of the plaintiff.

Nor do we think it important in the present case whether such a custom existed or not. The defendant does 2. CUSTOM: insur- not resist the payment of his note on the ance: evidence. ground that the policy issued to him was not such as is ordinarily issued by the plaintiff. It is true he testified that it contained provisions and conditions which he did not expect it to contain, but he distinctly states that the sole ground on which he refused to receive the policy was, that it did not contain a clause providing that he might cancel it at the end of a year, the agent of the plaintiff having agreed with him, at the time he made his application for insurance, that the policy should contain such a clause.

The written application is silent upon this point, as it is in regard to most of the stipulations and conditions in- 3. INSURANCE: ap- serted in fire policies. It states, as is gener- plication: rejec- tion of policy ten- ally the case, the time for which insurance is dered. desired, the amount of insurance, the loca-

tion, character and value of the property, and conditions as to ownership, incumbrances and other insurance. If the written application had undertaken to set forth all the provisions which the policy to be issued should contain, of course both parties would be bound by it, and parol evidence would be inadmissible to vary its terms. But when the application does not attempt to set forth all the provisions which the policy to be issued must contain, and the agent, with or without authority, represents that the policy will contain certain stipulations, which are not unlawful, then the policy must contain them, or the insured will not be bound to accept it. But in such case it will be the duty of the insured when he receives the policy promptly to examine the same, and if it does not contain the stipulations agreed upon, to at once notify the company of such fact, and of his refusal to accept said policy. The policy in this case was issued on the 25th day of January, 1875, and it was not rejected by the defendant until May 10th, 1875. If the policy was received by the defendant soon after the date on which it purports to have been issued, we think he waited too long to elect whether he would receive the policy without the stipulation in regard to cancellation, or refuse to accept it because it did not contain such stipulation. After such delay, he will be deemed to have accepted the policy as issued. The judgment will be reversed and the cause remanded. The other judges concur.