PEYTON F. GREENWOOD, Respondent, v. THE NEW YORK LIFE INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, October 24, 1887.

1. CONTRACT—LIFE INSURANCE—VERBAL AGREEMENT WITH AGENT—MERGER—ESTOPPEL.—Where a verbal agreement was made with the soliciting agent of a life insurance company at the time of making application for a policy, it never became a part of the contract, in writing, between the insurer and the insured.  "All previous verbal agreements were merged in the written agreement.  *  *  * The entire engagement of the parties, with all the conditions upon which its fulfillment could be claimed, must be conclusively presumed to be there stated." Nor could the previous representation

of the agent operate as an estoppel against the company. An estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made. Nor did a subsequent verbal agreement made with such agent, contemporaneously with the delivery of the policy to the insured, become a part of the contract, because of the merger aforesaid, and because of the limitation of the agent's authority made by the written contract itself.

2. ——— RATIFICATION, EFFECT OF—CASE ADJUDGED.—But where it was alleged in the petition, as in this case, that, notwithstanding the provisions of the policy, directing the payment of premiums to be made in the City of New York, or to the agent, yet the plaintiff thereafter, for a period of nine years, made such payments at the Kirksville Savings Bank, according to the understanding had with the agent of defendant, and the defendant, during all this period, recognized the act by the receipt of the money through this bank; these facts would constitute a ratification.

3. PRACTICE—PLEADING—RELIEF GIVEN SUCH AS FACTS AUTHORIZE. Under the prayer "for all proper relief," the court can administer such relief, as, in equity, the facts stated and proved authorize, no matter how the pleader may designate them in terms. The relief to which the party is entitled, the effect of the matter set up, is determined by the court, as a matter of law, from the facts pleaded.

APPEAL from Adair Circuit Court, HON. ANDREW ELLISON, Judge.

*Affirmed.*

Statement of case by the court.

In 1875 the plaintiff made application, in writing, to the defendant for a policy of insurance on his life in the sum of one thousand dollars. The application was made at Kirksville, Missouri, to a general agent of the defendant, one Woodfin. At the time of making the application, the plaintiff made and had an express agreement with Woodfin that the premiums on the proposed policy should be paid by plaintiff to the Kirksville Savings Bank at the town of Kirksville. Said agreement was verbal, it was not referred to in the application, which, as said, was in writing and signed by the plaintiff. Said application contained the following declaration or state-

ment: "And, inasmuch as only the officers at the home office of the company have authority to determine whether or not a policy shall issue on any application, and as they act on the written statement or representations referred to, it is expressly understood and agreed that no statements, representations, or information made or given by, or to, the person soliciting or taking this application for a policy, or to any other person, shall be binding on the company, or in any manner affect its rights, unless such statements, representations, or information be reduced to writing and presented to the officers of the company, at the home office, in the above application."

On the nineteenth day of July, 1875, the defendant, by its agent, Woodfin, delivered the policy applied for to the plaintiff. At the trial of this case, the plaintiff testified that the policy was when delivered enclosed in the envelope then had by him in court on which was printed in red ink, "Premiums payable at Western Branch office, 417 Pine Street, St. Louis, Missouri. William P. Hill, Manager;" and on the bottom of the envelope was, "M. H. Woodfin, General Agent." The plaintiff further testified as follows: "I was attracted by this red ink indorsement on the envelope, and told him my contract was to pay my premiums here at the bank, and at no other place. I would not have accepted the policy, but for this agreement. Woodfin said that was all right; that I could pay them here; that renewal receipts would be forwarded here to the bank where I could pay them, and that notice could be sent me, but that the sending of notice was only a courtesy."

The policy contained, among others, the following conditions and agreements:

"2. If the premiums as above stipulated shall not be paid on or before the days above mentioned for the payment thereof at the office of this company, in the City of New York (unless otherwise expressly agreed in writing), or to agents when they produce receipts signed

by the president, vice-president, or actuary, then, and in every such case, this company shall not be liable for the payment of the sum assured, or any part thereof, and this policy shall cease and determine ( claim for paid-up policy, as hereinbefore provided for, excepted ), and the acceptance, in any case, by the company, of a premium on a day subsequent to the day whereon the same is payable, as above provided, shall be deemed an act of courtesy only, and shall not be deemed a waiver of the foregoing condition as to payment of premium accruing thereafter, or as establishing any custom in conflict therewith. While said company, or its agents, may, at their option, give notice of the time of payment of said premiums, the giving of such notice shall be deemed an act of courtesy only, and shall not be deemed to establish a custom in relation thereto, or to be obligatory upon said company or its agents.

"3. In every case where this policy shall cease, and determine, or become, or be null and void, all payments thereon shall be forfeited to this company, and no action, or right of action, shall remain to, or be maintained against, this company by the assured, or by any other person, by virtue of this policy, or of anything connected therewith.

"4. Receipts for premiums are not valid unless signed by the president, vice-president, or actuary.

"5. Agents of the company are not authorized to make, alter, or discharge contracts, or waive forfeitures.

"6. Inasmuch as only the officers at the home office of the company, in the City of New York, have authority to determine whether or not a policy shall issue on any application, and as they act on the written statements and representations hereinbefore referred to, it is expressly understood and agreed that no statements, representations, or information made, or given, by, or to, the person soliciting, or taking the application, for this policy, or to any other person, shall be binding on the company, or in any manner affect its rights,

unless such statements, representations, or information, be reduced to writing and presented to the officers of the company, at the home office, in the application referred to."

To the policy was attached a copy of the original application, signed by the plaintiff, upon which the policy was issued.

The premiums on the policy were payable semi-annually. The plaintiff paid the premiums as they became due, from July 19, 1875, until July 19, 1883, to the Kirksville Savings Bank, and received from said bank the proper receipts, which had been signed and forwarded by the defendant to said bank, to be delivered to plaintiff upon the payment by him of said premiums.

On July 19, 1883, the plaintiff paid the premium then due to the bank at Kirksville, but the defendant refused to receive it, or to give a receipt for it, and demanded that such premium be forwarded either to New York, or St. Louis, which place it cannot be learned with certainty from the record, but that is utterly immaterial. After said last-named date, as a premium became due, the plaintiff paid it to the Kirksville bank and demanded a receipt therefor, and the defendant refused to receive the premium at said bank, or to give such receipt. The result was that the defendant declared the policy forfeited for non-payment of premiums in accordance with the terms and conditions of the policy.

The plaintiff brought this action, in which the court was asked to set aside the forfeiture of the policy, to restore the plaintiff to all his rights, under said policy, and to require the defendant to accept the deposits in its favor in the Kirksville Savings Bank, made by the plaintiff, or, in lieu thereof, to require the defendant to pay plaintiff the total amount paid by him in premiums on said policy, with interest on each premium from its payment.

Upon the foregoing facts the court rendered a decree

adjudging that the defendant restore the policy and forward to plaintiff all the necessary receipts up to date, and that the plaintiff have, and recover, etc., his costs, etc.

JOHN F. WILLIAMS and HOUGH, OVERALL & JUDSON, for the appellant.

I.   Under the contract of insurance set forth in the policy issued by the defendant, and accepted by plaintiff, the place of payment of premium, so far from being the Kirksville Savings Bank, is, in express terms, made the home office of the company in the City of New York, unless otherwise expressly agreed in writing ; or when agents produce receipts signed by the president, vice-president, or actuary.  *Life Ins. Co. v. Davis*, 95 U. S. 425.

II.   The limitation upon the authority of the soliciting agent (to-wit : that nothing said or done by or to him should affect the rights of the company, unless reduced to writing, and transmitted to the company with the written application) having been brought home to the knowledge of the plaintiff, a copy of the application being attached to the policy when delivered to him, and his attention called to it in express terms by endorsement on the face of the policy ; the express provision of the policy, as to the place of payment of premiums, cannot be controlled or affected by the alleged oral agreement with the agent at or prior to the issue of the policy.  *Life Ins. Co. v. Fletcher*, 117 U. S. 519 ; s. c., 22 Cent. Law Jour., 529, with note and cas. cit.

III.   Even conceding the alleged oral agreement with the agent, as to the place of paying the premium, it was the duty of plaintiff, when he received the policy, with his attention called to copy of application attached, and to the *importance of making the* corrections, to examine it, and to notify the company of his refusal to accept.   After nine years he is deemed to have accepted the policy as issued, with place of payment as therein

stipulated, there being no evidence whatever that the receipt of premiums at the Kirksville Savings Bank was other than a mere matter of convenience for the time being. *Ins. Co. v. Neiberger*, 74 Mo. 173, cited, approved, and followed in N. Y.' Reports; *Ins. Co. v. Fletcher*, 117 U. S. 519; *Swain v. Ins. Co.*, 96 Pa. 43; *Richardson v. Ins. Co.*, 46 Maine, 394; *Ins. Co. v. Davis*, 95 U. S. 428.

IV. The acceptance by the company of the premiums at the Kirksville Savings Bank, until 1884, or, rather, its continuance of the Kirksville Savings Bank as its agency, until that date, when plaintiff was duly notified that for the future such agency was discontinued, did not, and could not, make a binding contract for the permanent continuance of such agency during the life of the policy, for that the essential element of a contract by estoppel was lacking, to-wit: the consequent reliance, to his prejudice, by the plaintiff, upon such conduct, or tend to prove that such acceptance, at the Kirksville Savings Bank, was other than a temporary establishment of an agency for the time, for the mutual convenience of the parties, not presenting the slightest ground for varying the legal effect of the contract. *Life Ins. Co. v. Davis*, 95 U. S. 428.

V. Even conceding the alleged agreement of the agent with plaintiff, on delivering the policy, it cannot make a contract binding on the defendant, to maintain the Kirksville Savings Bank as a permanent agency for this policy, in that there was no consideration to support such alleged contract, and on this ground alone, defendant is entitled to judgment.

VI. The decree appealed from compels the specific performance, during the life of the plaintiff, of an oral agreement, which was clearly not to be performed within one year, and, therefore, void, under the statute of frauds.

VII. The agreement appealed from, in that it compels the plaintiff to continue the Kirksville Savings

Bank as a permanent agency, is not only inconsistent with the expressed provisions of the policy, but is manifestly absurd, and incapable of execution—presents no case for equitable relief.

P. F. GREENWOOD, for the respondent.

I.    This action was brought to have the policy declared in force, or to recover the premiums paid.    The judgment of the court finds that the policy was not forfeited by any act of the respondent, and merely declares that it is in force, and that appellant forward the renewal receipts to plaintiff.

II.    The evidence of respondent establishes, and it is so found by the court, that when the policy was delivered to the respondent, he at that time objected to receiving the policy, on the sole ground of the place where the premiums were to be paid ; that, upon this objection being urged, the appellant, by its general agent, M. H. Woodfin, M. D., assured the respondent that it was all right ; that he could, as originally agreed, pay his semi-annual premiums into the Kirksville Savings Bank.    The policy, on these terms, was accepted, and from January, 1875, to July 19, 1883, this contract was performed twice a year, without any objection on the part of the appellant, until the respondent had paid the premiums to the amount of near two hundred and fifty dollars, and that, too, without payment, by him, of any draft.    There is not one word in the judgment about maintaining the Kirksville Savings Bank, as an agency, as claimed by appellant.    The judgment is for the right party, and is amply supported by the evidence.

III.    The defendant, by the very stationery it sends out to its patrons, says M. H. Woodfin is our general agent, also medical examiner ; not merely agent to solicit applications for us, but he solicits applications, makes medical examinations, receives from the company policies, and delivers them to the assured, in envelopes, the last words on which are M. H. Woodfin, general

agent. A general agency properly exists where there is a delegation to do all acts connected with a particular trade, business, or employment. Evans on Agency [Ewell's] side p. 102, 103, and authorities cited ; *Lightbody v. Ins. Co.*, 23 Wend. 18. The company held M. H. Woodfin out to the respondent as a general agent.

IV. The waiver of the place of payment was within the scope of his apparent authority, and binds the defendant. Wood on Fire Insurance [1 Ed.] sect. 383, and authorities cited. As to apparent authority of the agent, see section 398, same author, especially the two last sentences. The law makes no presumption as to authority of agent; his authority must be shown, which is done in this case. Same author, section 399, and authorities cited ; also, section 500, same author.

V. Notice to Woodfin, general agent, was notice to the company. Wood on Fire Insurance, sect. 406. Forfeitures of life policies are not favored, and, under some circumstances, they are odious. *Union Central Life Insurance Co. v. Pottker*, 7 Cent. Law Jour. 415 ; *Froehlich v. Atlas Life Insurance Co.*, 47 Mo. 406.

VI. The place of payment is a provision in the policy for the benefit of the company, and may be waived. This proposition needs no citation of authorities.

VII. The judgment is in proper form. *Day v. Life Ins. Co.*, 7 Rep. January to June, 1879, p. 175 ; s. c., 45 Conn. ——. Or might have been for the premiums paid, together with interest, which judgment this court can render. *American Life Ins. Co. v. McAden*, 1 Cent. Rep. 379 ; s. c., Sup. Ct. Pa. Oct. 5, 1885 ; *Seipel v. Ins. Co.*, 84 Pa. St. 47 ; May on Insurance, sect. 429 ; *McKee v. Ins. Co.*, 28 Mo. 383.

HOUGH, OVERALL & JUDSON, in reply.

I. The subsequent conduct of the company, in accepting the amount of plaintiff's premiums at the Kirksville Savings Bank, for several years, and forwarding

the receipts, duly signed, as required by the policy, obviously, for the time, constituted that bank an agency of the defendant, under the provisions of the policy, but an agency revocable at any time. The provisions of the policy, by its express terms, contemplated the receipt of premiums at agencies, when such agencies were constituted, by being furnished with receipts signed by the officers of the company. But, in the language of the Supreme Court of the United States, in the *Davis case*, above quoted, this was only a matter of convenience, and subject, of course, to change. Nor can such continuance, for the time being, of the bank, as an agency, constitute, under the rules of law, a ratification by the company of the alleged oral agreement of Woodfin that the bank would be a perpetual agency.

II. Woodfin having admittedly no power to bind the company by such a contract, no ratification can be claimed from the company's subsequent retention of the bank as an agent, without proof that such retention was done with full knowledge, on the part of the home officers, of all the material facts. No such proof was offered. That the burden of proof is on the plaintiff to show knowledge with ratification, is settled by the decision of the Supreme Court, in the case of *Cravens v. Gillellin* (63 Mo. 32, 33), and by the decision of this court, in the case of *Winston v. Bank* (18 Mo. App. 665), and cases therein cited.

III. It is obvious that knowledge of the alleged oral agreement cannot be inferred from the company's retention of the bank as an agency for the time being, as such retention was consistent with, and clearly contemplated by, the provisions of the policy. If the acts which are claimed to constitute a ratification of an oral agreement, made by an agent without authority, are consistent with and referable to the written contract, it is clear that, from such acts cannot be inferred, without other proof, a knowledge of the alleged oral agreement, inconsistent with the written contract. The law of rati-

fication is also set forth in *Baldwin v. Burrows*, 47 N. Y. 211; *Moore v. Pattison*, 28 Pa. 505; *Middleton v. Railroad*, 67 Mo. 579; *First Nat'l Bank v. Gay*, 63 Mo. 28; *Combs v. Scott*, 12 Allen, 493.

IV.   We submit that the views thus expressed are decisive of the case.   The decree for restoration is, in effect, a decree for specific performance.   It may appear a trifling matter for litigation, the question whether plaintiff's premiums should be paid at the Kirksville Savings Bank or at St. Louis; and to the plaintiff it is trifling, but to the defendant it involves the question whether it can rely in safety upon its written contracts. If the present decree can stand at all, it stands upon the ground that defendant is bound by contract to maintain a perpetual agency in the Kirksville Savings Bank, for the benefit of the plaintiff.

V.   What was to become of the contract, if the bank went out of business, during plaintiff's life, does not appear.

HALL, J.—In considering this case, we shall assume that the defendant's agent, Woodfin, both at the time plaintiff made the application and at the time Woodfin delivered the policy to him, made the verbal agreement with him that he should pay the premiums, when due, at the Kirksville bank, and that, on that condition, the plaintiff applied for and accepted the policy.   The verbal agreement, made at the time of the making of the application, never became a part of the contract between plaintiff and defendant.   "All previous verbal agreements were merged in the written agreement.   *   *   * The entire engagement of the parties, with all the conditions upon which its fulfillment could be claimed, must be conclusively presumed to be there stated." *Ins. Co. v. Mowry*, 96 U. S. (opinion by Field, J.).

The defendant was not, by said verbal agreement, estopped from forfeiting the policy, in accordance with the terms of the policy, on account of the non-payment

at the place named in the policy. "The previous repre-
sentation of the agent could in no respect operate as an
estoppel against the company. * * * An estoppel
cannot arise from a promise as to future action with
respect to a right to be acquired upon an agreement not
yet made. * * * But the doctrine has no place for
application when the statement relates to rights depend-
ing upon contracts yet to be made, to which the person
complaining is to be a party. He has it in his power, in
such cases, to guard in advance against any conse-
quences of a subsequent change of intention and con-
duct by the person with whom he is dealing. For
compliance with arrangements respecting future transac-
tions, parties must provide by stipulations in their
agreements, when reduced to writing. The doctrine,
carried to the extent for which the assured contends in
this case, would subvert the salutary rule, that the writ-
ten contract must prevail over previous verbal agree-
ments, and open the door to all the evils which that rule
was intended to prevent." *Ins. Co. v. Mowry, supra,*
and authorities cited.

The verbal agreement made between plaintiff and
defendant's agent, contemporaneously with the delivery
of the policy by the latter to the plaintiff, did not become
a part of the contract between plaintiff and defendant.
This is true for the same reason that the prior verbal
agreement never became a part of such contract, and
also for an additional reason. The very written con-
tract which it was thus proposed to change, by a verbal
agreement with defendant's agent, recited, as one of its
conditions: "Agents of the company are not author-
ized to *make, alter,* or discharge, contracts, or waive
forfeitures." This limitation upon the authority of its
agents, the defendant had the right to make, and, being
in the contract in plain and unambiguous terms, such
limitation was binding upon the plaintiff. *Ins. Co. v.
Fletcher,* 117 U. S. 530. The agent had no power to
alter the contract. And said agreement did not operate

as an estoppel against the defendant, for the reasons already given.

By receiving payment from plaintiff of the premiums at the Kirksville bank for eight years, the defendant did not waive the right to demand payment of the premiums, thereafter, at the place named in the contract. The defendant did not forfeit the policy for non-payment of a premium on the day designated in the policy, at the place therein named, but did forfeit the policy because the plaintiff refused to pay at said place at all, and stood upon his right to pay at the Kirksville bank only. Had the plaintiff, induced by the action of the defendant in receiving payment at the said bank, paid a premium there on the day designated in the policy, without notice from the defendant that it would demand payment at the place named in the policy, the defendant could not have forfeited the policy because the plaintiff had not paid the premium on the day so designated, at the place so named. The principle of estoppel would, in such a case, have had something on which to act. The plaintiff, having been induced by defendant to act contrary to the letter of the policy, could not have been deprived of a right under the policy for having so acted. In such a case the defendant would have waived the right to the payment of the premium *on the designated day*, at the place named, but not to the payment *at the place named, forever, on some other day*. Payment on the designated day could not have been demanded except to the injury of the plaintiff, in the case supposed, and could not, therefore, have been demanded, because it was not so made by reason of the conduct of the defendant.

Even a contract cannot be used by one party to it for the purpose of defrauding another party thereto. But the contract, nevertheless, would have remained the same, and could have been enforced, in every other respect. It could not have been enforced in that particular only, to have enforced it in which would have worked a

wrong, and an injury to the plaintiff. But in this case there was no pretense that the plaintiff would be injured on account of his reliance on the conduct of the defendant, in receiving the premiums at the Kirksville bank for eight years, if he were, after said time, compelled to pay the premiums at the place named in the policy. There was no intimation that, by reason of the defendant's conduct, in the respect named, it would have cost the plaintiff any more to pay the premiums, at the place named in the contract, than it would have cost the plaintiff to have so done had he been compelled to so do in the beginning. The contract was not changed by reason of such conduct on the part of the defendant. The Kirksville bank was not thereby substituted for the place of payment, named in the contract. The principle of estoppel has no such force or effect. In *Insurance Company v. Eggleston* ( 96 U. S. 577 ), the insured, residing in the state of Mississippi, had always dealt with agents of the company, located either in his own state, or within some accessible distance. He had originally taken his policy from, and had paid his first premium to, such an agent, and the company had always, until the last premium became due, given him notice what agent to pay to. The court said, in discussing the question of estoppel : " * * * Now, suppose the local agent is removed, or ceases to act, without the knowledge of the policy-holders, and their premiums become due, and they go to the local office to pay them, and find no agent to receive them ; are these policies to be forfeited ? Would the plaintiffs in error, or any other company in good standing, have the courage to say so ? We think not. And why not ? Simply because the policy-holders would have the right to rely on the general understanding produced by the previous course of business pursued by the company itself, that payment could be made to a local agent, and that the company would have such an agent at hand, or reasonably accessible. *We do not say this course of business would alter the written contract, or*

*would amount to a new contract, relieving the parties
from their obligations to the company, if they can find
no agent to pay to.* That obligation remains.  But we
are dealing with the question of forfeiture for not paying
at the very day ; and, in reference to that question, it is
a good argument in the mouths of the insured, to say,
' Your course of business led us to believe that we might
pay our premiums at home, and estops you from exact-
ing the penalty of forfeiture, without giving us reason-
able notice to pay elsewhere.'  *The course of business
would not prevent the company, if it saw fit, from dis-
continuing all its agencies, and requiring the payment
of premiums at its counter in New York."*  In this case
there is no estoppel.

There remains to be considered the question of rati-
fication by the defendant of the unauthorized agreement
made by its agent.

The judgment, in this case, cannot be upheld on the
ground of such ratification, because no such issue was
made by the pleadings.  Ratification must be pleaded.
*Wade v. Hardy,* 75 Mo. 399.  The plaintiff to main-
tain this action, on the ground of the defendant's ratifi-
cation of the unauthorized agreement, had to plead such
ratification in express terms, or by the allegation of facts,
from which ratification would have *been necessarily* im-
plied.  The allegation of facts, from which ratification
*might* have been inferred, was not sufficient.  The facts
alleged to raise the issue of ratification by force of the
allegation of them had to *conclusively* show ratification.
In other words, ratification was not pleaded by the alle-
gation of certain facts, unless the judgment of the law
on those facts is that those facts, of themselves, necessa-
rily constituted ratification.  If the facts alleged consti-
tuted ratification, not as a matter of law, but only by
reason of the inference drawn from them by the trier of
the facts, by the exercise of his judgment on the question
of fact, that the facts essential to ratification did exist,
then the facts alleged did not raise the issue of ratifica-

tion.   For in such case the facts did not make ratification, but were simply evidence of ratification.

In the petition, ratification was not pleaded in express terms ; neither was ratification pleaded by the allegation of facts, from which it was necessarily implied. But we cannot hold, with the defendant's counsel, that, from the facts proved, which were also alleged in the petition, that the defendant, for eight years, sent to the Kirksville bank properly executed receipts for the premiums as due, it might not be inferred that the defendant ratified the unauthorized agreement, made by its agent with plaintiff, that such course would be pursued.

Ratification of the agreement, of course, could have been made by the defendant, only through an officer authorized to have made the agreement in the first place ; and ratification of the agreement could not have been made through such officer, unless he had knowledge of such agreement.   While the course pursued by the defendant referred to does not conclusively show that the officers of the defendant, competent to have made the agreement, knew that such agreement had been made, it tended, we think, to show such knowledge.   The bank was not an agent, such as referred to in the policy, authorized to receive payment of premiums, on the presentation of properly-executed receipts.   The bank was selected by the defendant for the specific purpose of receiving payment of the premiums and delivering the receipts therefor, and acted for the defendant in no other matter, and it may be reasonably inferred that the selection of the bank for such purpose was made in pursuance of the agreement that such course would be pursued with full knowledge of said agreement.   But such inference need not be necessarily drawn, and the defendant has the right to show, by proper evidence, that the facts inferred are not true.

In my opinion the judgment should be reversed and the cause remanded.   The other judges concur in this opinion except in so far as concerns the question of rati-

fication. Upon that question their views are thus expressed:

They are of opinion that the facts pleaded in the petition and proved at the trial are equivalent to a ratification by the defendant company. As it is distinctly alleged in the petition, that notwithstanding the provision of the policy directing the payments of premiums to be made in the City of New York, or to the agent, yet the plaintiff thereafter, for a period of nine years, made such payments at the Kirksville Savings Bank, according to the understanding had with the agent, Woodfin, and the defendant, during all this period, recognized the act by the receipt of the money through this bank, the majority hold that these facts would constitute a ratification; and because the pleader alleged that defendant's "subsequent acts in receiving payments from plaintiff at the Kirksville Savings Bank" estops it, etc., could not alter the legal effect of the facts pleaded and proved, or disentitle him to relief according to the facts pleaded and proved. Under the prayer "for all proper relief" the court can administer such relief as in equity the facts stated and proved authorize, no matter how the pleader may designate them in terms. *Wilkin v. Wilkin*, 1 Johns. Ch. 111; *Holmes v. Fresh*, 9 Mo. 201; *McGlothlin v. Hemery*, 44 Mo. 351; *Northcraft v. Martin*, 28 Mo. 469; *Ashby v. Winston*, 26 Mo. 210-213. "The relief to which the party is entitled—the effect of the matter set up—is determined by the court as a matter of law from the facts pleaded." *Turley v. Edwards*, 18 Mo. App. 689-690. The majority hold that, when the defendant, through a period of eight years, knew the plaintiff was making payment at the Kirksville bank, when the policy required a different mode of payment, the presumption of fact arises that it must have made inquiry into the cause of this departure of its agent, and its continued silence and receipt of the money through the bank is a most persuasive proof of a waiver and rat-

ification ; and as the decree was for the right party, they will not disturb it because the circuit court may have given a wrong reason for it, and as no reason is assigned in the decree different from the one entertained here, the presumption is to be indulged that the court was influenced by the proper one.

It follows that the judgment of the circuit court must be affirmed.