GEORGE V. RAKER, RESPONDENT, v. THE SERVICE LIFE INSURANCE CO., APPELLANT.—49 S. W. (2d) 285.

Kansas City Court of Appeals. May 2, 1932.

1234

*Roscoe C. Summers* and *W. M. Anderson* for respondent.

*George R. Chamberlain* and *Allen & Requartte* for appellants.

BLAND, J.—This is an action, in five counts, to recover the amounts of premiums paid on life insurance policies. There was a verdict and judgment in favor of plaintiff on all five counts of the petition. Defendant has appealed.

The policies were not all issued to plaintiff, but one each to himself and four others, who applied for the insurance, received the policies and assigned their causes of action against the defendant to plaintiff. There is some dispute between the parties as to whether the various counts of the petition plead causes of action in tort based on fraud and deceit or to recover the consideration paid upon contracts rescinded by plaintiff and his assignors. But for the purpose of the case we may assume the latter to be the case, as contended by plaintiff.

The theory upon which a recovery is sought of the premiums paid, which was the first and only premiums paid upon the policies in question, is that the agent of the defendant, who solicited the insurance, represented to those who applied for the policies that the latter would contain certain provisions not actually contained therein when they were received and, which, had they been in the policies, would have made them much more favorable and valuable to the applicants.

The applicants for the policies all resided in the same general vicinity and were interviewed there by one, Caulder, a soliciting agent of the defendant.

Plaintiff's evidence, in reference to the taking out of his policy, shows that the application was signed on the 9th day of August, 1928; that the policy was received by him on September 8, 1928; that he examined the policy upon its receipt and saw that it did not contain the provisions as represented by the agent; that about October 22, 1928, he wrote a letter to the State agent located in Kansas City, demanding his money back; that on October 28th, the State agent replied, stating that he did not know where Caulder was at the time as he had left the company, and attempting to prevail upon plaintiff to retain the policy. There was no admission in the letter

that Caulder made the representations claimed in the petition. In fact defendant's evidence tends to show that no representations of that character were made by Caulder to anyone. Plaintiff retained the policy in his possession or it was in the possession of his attorney until the time of the trial of this case, on April 25, 1930, when it was tendered into court.

The second count of the petition concerns the insurance of one Gordon Raker. The evidence in reference to this count shows that he read the application before signing it; that he received the policy a few days after September 20, 1928; that he looked it over and gave it to his brother, the plaintiff, who was a business man, a banker; that no one wrote to the defendant or any one else in reference to the matter; that the first time he notified the defendant that he was dissatisfied was when this suit was filed on August 29, 1929; that the policy was then tendered into court at the trial; that the policy had been in possession of himself, his brother or his attorney ever since it was received.

The third count concerns the insurance of one John Earl Baker. This policy was issued on September 18, 1928. Baker testified that he read the application before signing it; that he received the policy a few days shortly after September 18, 1928; that he was busy and did not look it over at once, but later he examined it and in a few days thereafter mailed it back to the company "the last day of October or the first of November," demanding his money back; that he kept the policy "Along from about the first of September, the time that I received it until the first of November;" that he had it in his possession "a few days after" he had the policy one month; that it was returned to him with a letter dated November 16, 1928, in which the company, in effect, maintained that the insurance was valid; that since the receipt of the policy the second time it has been in his possession or that of his attorney.

The fourth count covers the insurance of Ira Wall. His policy is dated September 24, 1928. He testified that he read and signed the application. It is not shown when he received the policy but he sent it back about the last of September demanding his premium back and, the policy was returned to him by the company through the mails. It has been in his possession or the possession of his attorney from that time until the time of the trial.

The fifth count involves the insurance of Gorman Raker. The evidence shows that his policy was issued on September 14, 1928. Raker testified that he read and signed the application; that he received the policy a short time after September 14th; that he and plaintiff, his brother, looked it over but put it away and kept it until a short

time before this suit was filed. (The suit was filed on August 29, 1929) ; that ''I heard about the other policies being sent back and I waited to see about them;'' that the policy was in his possession or that of his brother, the plaintiff, during all that time.

Each of the applications for the policies contains the following clause :

''I agree that said policy, together with the application, shall constitute the entire contract, and that said Company shall not be held responsible for agent's statements or representations at variance therewith.''

Defendant insists that its instructions in the nature of demurrers to the evidence on each count of the petition should have been given. We think this contention must be sustained.

Caulder was not a general agent of the defendant. He had no authority to issue, countersign or deliver policies. He took the applications and sent them to the company which issued the policies and mailed them to the applicants. He had no more authority than that of a mere soliciting agent with the added power to receive the first premiums. The applications, upon their face, show that they, together with the policies, contained the entire contract and that Caulder had no authority to make any representations in reference to the matter outside of that contained in the writings. [Am. Ins. Co. v. Neiberger, 74 Mo. 167, 173 ; Van Ravenswaay v. Covenant Ins. Co., 89 Mo. App. 73, 77 ; Harnickell v. N. Y. Life Ins. Co., 111 N. Y. 390, 398, 399 ; Greenwood v. N. Y. Life Ins. Co., 27 Mo. App. 401 ; Manhattan Life Ins. Co. v. Stubbs, 216 S. W. 896 ; Conn. Fire Ins. Co. v. Roberts, 11 S. W. (2d) 148 ; Baird v. Union Mut. Life Ins. Co., 103 Nebr. 609 ; Reliance Life Ins. Co. v. Hightower, 148 Ga. 843 ; Luellen v. N. Y. Life Ins. Co., 201 Mich. 512 ; Davis v. Met. Life Ins. Co., 131 S. E. 490.] As is stated in Kaley v. Northwestern Mutual Life Ins. Co. (Nebr.), 166 N. W. 256, 258 :

''Ordinarily the acts of an agent within the scope of his authority will bind the principal, but where there is an express limitation of this brought to the knowledge of the person· dealing with the agent, no act of the agent beyond the limitation can bind the principal.

''Life insurance is based upon mathematical principles. Its plans of insurance, and the rates of premium payments to be made are prepared by actuaries and based upon mortality experiences. The safety and permanence of such associations, and the welfare of their policyholders demand that their contracts may not be held subject to be changed at will by a mere agent whose limited powers have been brought to the knowledge of the applicant.''

Aside from this, as a matter of law, all of the parties, save possibly Wall, whose evidence is indefinite, failed to rescind their contracts

within a reasonable time. [Faith v. Home Life Ins. Co., 203 Mo. App. 196; Fid. & Cas. Co. v. Lbr. & Coal Co., 133 Mo. App. 637; Ijams v. Life Insurance Co., 185 Mo. 466; Lierheimer v. Life Ins. Co., 122 Mo. App. 374; Home Ins. Co. of N. Y. v. Horrell et al., 206 Mo. 352; Am. Ins. Co. v. Neiberger, supra; Continental Ins. Co. of N. Y. v. Phipps, 190 S. W. 994.] We have examined the cases cited by plaintiff and find them not in point.

"On contracts of insurance, the reason for prompt action on the discovery of an alleged fraud, above all other contracts calls for speedy repudiation, because the position of the parties changes day by day; the contract as it stands is in full force, and the company is obliged to pay if any of the conditions happen upon which liability rests, and each day that the policy which is issued runs and is in force constitutes a consideration moving from the Insurance Company to the assured." [Faith v. Home Life Ins. Co., supra, l. c. 200.]

"Defendant's duty was to read the policies promptly and object reasonably (seasonably). It is too late now, after the risk has been carried and the premiums earned, to consider questions of variance between application and policy. [Ins. Co. v. Neiberger, 74 Mo. 167; McHoney v. Ins. Co., 52 Mo. App. 94; Lierheimer v. Ins. Co., 122 Mo. App. 374, 99 S. W. 527.] See a leading case; Bostwick v. Ins. Co., 116 Wisc. 392, and notes." [Fid. & Cas. Co. v. Lbr. & Coal Co., supra, l. c. 642.]

Wall's testimony shows that he returned the policy to the company and in a few days he received a letter stating that he would hear from the state manager at Kansas City. He thought that he had turned the letter and "all the letters" over to his lawyer. The contents of the letter are not shown in the evidence. He stated that he received the policy back through the mails; that in a letter he wrote the company he demanded his money back. After he received the policy the second time he kept it until he turned it over to his lawyer. The burden of proof was on plaintiff and it is doubtful whether this constitutes a sufficient showing of a rescission of the contract before the suit was filed, which was too late. Whether his action amounted to a rescission prior to that time depends upon what was in the letters that were exchanged. The correspondence may have shown that the company had apparently satisfied the insured and was led to believe it had actually done so by the retention of the policy by him. He could not blow hot and cold at the same time. He could not lead the company to believe that he had been convinced and then repudiate his action by finally after months of delay, filing suit through either himself or his assignee. [Sterling v. Lily, 42 So. Dak. 437.] This matter is also in doubt as to the others

who sent back their policies but finally retained them. At all events it is quite apparent that plaintiff is unable to make out a cause of action on any one of the five counts of the petition, and it would be useless to send this case back for another trial.

The judgment is, therefore, reversed. All concur.