### ÆTNA LIFE INS. CO. v. MEYN et al.
### No. 12441.

Circuit Court of Appeals, Eighth Circuit.

March 5, 1943.

E. R. Morrison, of Kansas City, Mo. (R. L. Hecker and Morrison, Nugent, Berger, Byers & Johns, all of Kansas City, Mo., on the brief), for appellant.

Walter R. Barnes, of Kansas City, Mo., for appellees.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This suit was brought by the appellees, beneficiaries in a policy of insurance upon the life of William F. Meyn, to recover the sum insured by the policy. From a judgment in their favor at a trial without a jury the insurance company appeals.

There is no dispute concerning the material facts. William F. Meyn was insured by the appellant insurance company under a policy of life insurance expiring on the 5th day of March 1935. The policy was a seven-year term, nonparticipating, convertible contract of insurance, under which the insured acquired the right, at any time before its expiration, to exchange it for a level premium whole life or endowment policy for an amount not in excess of the amount insured. Under the conversion privilege of the policy, the insured had the right to have the new policy bear the date of the exchange of the policies or the date of the convertible policy. In the latter event insured was required to pay the difference between the premiums already paid on the convertible policy, for an amount of insurance equal to that of the new policy, and those that would have been required under the new policy, with interest at six per cent per annum. The premiums under the policy were payable quarterly upon the 5th days of March, June, September, and December. On January 5, 1935 the insured made application to the appellant company for the exchange of his term policy for a nonparticipating, modified life policy in the sum of $2,500, with provisions for waiver of the payment of premiums in case of the insured's total and permanent disability, and for the payment of double the amount insured in the event of the policyholder's death from accident. The application for conversion to the new policy was in writing signed by the insured, and contained a request that the new policy be dated September 5, 1934 and the following agreement: "I agree that the acceptance by me of any policy issued on this application is to be regarded as an acknowledgment that the same is satisfactory and shall constitute a ratification of the manner in which the policy is written and of any corrections, additions, or changes in this application made by the Company, and that all insurance under said Term policy, or portion thereof converted as herein requested, shall thereupon cease." Typed on the application were the words "Automatic Premium Loan Provision."

The appellant insurance company accepted the application and issued the policy of insurance involved in this suit. The application for the exchange of policies was made on the last day remaining for the payment by insured of the quarterly premium of $16.40 due on the original policy as of December 5, 1934. The amount of the quarterly premium on the new policy was $14.25, to be paid to the company on

or before the 5th days of September, December, March, and June of each year for the first five years of the policy, and $27.55 thereafter during the lifetime of the assured. Since the new policy, by agreement of the parties, was dated on the 5th day of September 1934, two quarterly premiums were due at the time of the application for the new policy and at the time of its delivery to the insured, one being due on September 5, 1934 and one on December 5, 1934. The payment of these premiums was arranged by payment of the quarterly premium due on the old policy at the time of the application for conversion, amounting to $16.40, plus $10, and by the payment of the balance of $2.10 on January 21, 1935, the delivery date of the new policy. The effect of this arrangement was that the premium due December 5, 1934 on the original policy was applied to the payment of the premium due on the new policy.

The new policy contained the following provisions on the questions presented here:

"Request having been made in the application for this policy for the operation of the automatic premium loan provision herein, this endorsement shall be deemed to make said provision effective until revoked.

\*　　\*　　\*　　\*　　\*

"If due written request for the operation of this provision has been filed at the Home Office of the Company before default in payment of premium, thereafter until a written revocation of said request has been filed with the Company, the amount of any premium not paid before the end of the grace period will automatically be loaned by the Company in payment of such premium and charged as an indebtedness secured by this policy, subject to interest at the rate of six per cent per annum as prescribed for loans, provided that the total indebtedness hereunder will then be within the loan value described in Section 6.

"While this policy is continued in force as above, the whole or any part of the indebtedness may be repaid and payment of premiums in cash resumed without further evidence of the good health of the insured.

\*　　\*　　\*　　\*　　\*

"This policy shall not become effective until the first premium upon it is paid."

Meyn paid the quarterly premiums due on this policy through its first five years.

On September 5, 1939, the quarterly premium rate changed from $14.25 to $27.55. Meyn did not pay this premium. In accordance with the automatic premium loan provision, the company paid it and charged it as a debt against the policy. Upon this payment the company mailed to Meyn its official receipt, reciting that the quarterly premium then due had been paid by the company under the automatic loan provision in force in the policy, and that the amount due had been charged as a debt secured by the policy. On the back of this official receipt under the heading "Warning", the policyholder was advised not to rely on the automatic premium loan provision to prevent lapse of the policy without making sure that there was sufficient loan value in the policy to pay the premium. Meyn also failed to pay the quarterly premiums due on December 5, 1939 and March 5, 1940. Upon each default the company paid the premiums under the automatic premium loan provision, and mailed to Meyn its official receipt and warning notice. The company's official receipt for the premium due on March 5, 1939, was inclosed in a letter to the insured, advising him that while the automatic premium loan provision contained in his policy was a valuable one, inasmuch as it prevented the lapse of the policy, it could not be relied on forever nor after the loan value of the policy had been exhausted by its application. The insured was urged to repay the loan charged against his policy by reason of the operation of the automatic premium loan provision.

The same letter accompanied the company's official receipt for the premium due on March 5, 1940, and paid under the automatic premium loan provision of the policy. And to this letter there was appended a postscript advising the insured that the loan value under the policy would not be sufficient to pay the quarterly premium due on the 5th of June 1940 and, for this reason, some other method must be used to meet the payment then becoming due. It is admitted that Meyn received all of the premium notices advising him of the payment of his premium by the application of the automatic premium loan provision contained in his policy, and that he received the letters just discussed. Nevertheless, he failed to pay the premium due on June 5, 1940 and the policy, which at that time had a net value of only ninety cents, lapsed within a few days after the

premium became due. Meyn died on July 14, 1940, after the lapse of his policy for nonpayment of premiums.

Appellees, to sustain a recovery upon the policy, insisted in the court below, as they do here, that the automatic premium loan provision was placed in the policy without the knowledge or the consent of the insured; that the company, therefore, had no right to apply this provision to the payment of premiums in default, but should have applied the reserve value of the policy at the time of Meyn's default in the payment of premium due September 5, 1939 to the purchase of extended insurance. They also contend that the policy by its terms did not take effect as of its date on September 5, 1940, but upon the date when the payment of the first two quarterly premiums thereon was completed by the insured, which occurred on January 21, 1935. The first of these contentions was sustained by the court below and judgment against the insurer was entered for the face of the policy, with interest, plus the penalty provided by Missouri law for vexatious delay in paying the amount due upon an insurance policy, plus appellees' counsel fees. Error is assigned by appellant in respect to all of these holdings and also on the ground that the court declined to make findings of fact and conclusions of law as required by the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

■ With respect to the assignment of error last mentioned, it is true that there was a formal failure on the part of the trial court to make findings of fact and to state separately its conclusions of law thereon as required by Rule 52 of the Rules of Civil Procedure. But the controlling facts are not in dispute. The questions for decision below were questions of law. The trial judge wrote two opinions in which he stated his conclusions of law upon admitted facts. The parties request a decision here upon the merits. In the circumstances stated, we think we are at liberty to decide the case on its merits, without remand for a mere formal compliance with the rules. Helfer v. Corona Products, Inc., 8 Cir., 127 F.2d 612, 615; Girard Trust Co. v. Amsterdam, 5 Cir., 128 F.2d 376, 377; Knapp v. Imperial Oil & Gas Products Company, 4 Cir., 130 F. 2d 1, 3; Goodacre v. Panagopoulos, 72 App.D.C., 25, 110 F.2d 716, 718.

The parties agree that without the automatic loan provision in the policy the extended insurance provision, which operates in the absence of the loan provision, would have kept the policy in effect beyond the date of insured's death, except as to the provisions concerning waiver of premiums and double indemnity benefits. It is also agreed that if the effective date of the policy was January 21, 1935, the date on which the last installment of the premiums due on the new policy was paid, then the policy would have remained in effect for approximately its face value, either with or without the automatic premium loan provision.

■ The policy of insurance being a Missouri contract, the question of its effective date is one of Missouri law, and one which has received the consideration of Missouri courts in a great number of cases. The leading cases in Missouri are collated and distinguished in two late opinions of the Supreme Court of Missouri. Howard v. Ætna Life Ins. Co., 346 Mo. 1062, 145 S.W.2d 113; and the same case Mo.Sup., 164 S.W.2d 360. And this court has considered and applied the Missouri decisions in cases involving the effective date of insurance contracts under Missouri law in Penn Mutual Life Assurance Co. v. Forcier, 8 Cir., 103 F.2d 166; and Equitable Life Assurance Society v. Tucker, 8 Cir., 126 F.2d 396. In these cases the following propositions are established: (1) in the construction of insurance contracts, as in the construction of other contracts, courts have no other function but to ascertain and enforce the intention of the parties. Where there is ambiguity in the contract, that construction most favorable to the insured is adopted by the courts unless the parties themselves have adopted a contrary interpretation; (2) the parties to an insurance contract are competent to fix the date when the contract shall become effective. When it appears that the parties themselves have clearly agreed upon a date on which the policy shall take effect, that date governs concerning the payment of premiums and the expiration of the policy, even though the contract contains a provision that it shall not go into effect until the payment of the first premium; and (3) where the contract expressly provides that it shall take effect only on payment of the first premium, this provision controls both as to the date on which premiums must be paid and as to the date of expiration of the policy, nothing more appearing than that the insurance company has dated

**250**

the policy on a date prior to the payment of the first premium and has provided for the payment of subsequent premiums upon the policy date in succeeding years. In such cases there is no ambiguity in the contract. Since the premiums are payable in advance, a mere dating of the policy at a time prior to its effective date and the subsequent payment of premiums on the day of the policy's date are not sufficient to change an explicit provision in the contract that it takes effect as of a later date. A contrary holding would result in the insured's paying for insurance over a period during which the insurance company was under no liability to him and in which he had no insurance.

■ The principles pronounced by Missouri courts compel the conclusion that the effective date of the policy sued on was September 5, 1934. An important circumstance to be noted is that this is not a case of an original contract of insurance, but one involving a substitution of one contract for another. This fact was thought to have controlling weight on the question here in Winters v. Reserve Loan Life Ins. Co., 221 Mo.App. 519, 290 S.W. 109, discussed with approval in the later of the Howard cases, supra. Under his original contract of insurance Meyn was given the option to have the policy sued on dated at a time before the payment of the first premium. This contractual right is one of the valuable incidents of term insurance. It enables the insured to carry insurance at low cost during the term, and to convert his contracts to better forms of insurance without increasing the premium rate, while avoiding the risk of becoming uninsurable with advancing years. Meyn took advantage of this option by requesting in writing in his application for the exchange that the new contract should bear the date of September 5, 1934. A condition to the exercise of this option was the payment by Meyn of the premium on the new policy from the prior date specified by him. Meyn not only asked that the policy in suit be dated on the 5th of September 1934, but he paid the premium accruing on that policy as of that date. He was not charged by the insurance company for coverage under the new policy for a period in which he did not receive that coverage. He applied for the policy in suit on the last day of the grace period for payment of the premium on the old policy. On that date he had to pay the premium of

$16.40. He made the payment but, by agreement with the insurance company, it was arranged that the amount of this premium should apply, not to the payment on the original policy, but to back premiums on the new policy.

It is apparent that the parties, in executing the exchange of policies and in arranging the payment of additional premiums due as a result of the exchange, substituted the coverage of the new policy for the coverage of the old as of September 5, 1934. We are not at liberty to disregard Meyn's written request that the policy in suit bear the date of September 5, 1934, and the insurance company's acceptance of that request, followed by Meyn's payment of premiums upon the policy, based and computed upon that date. In this respect the facts here are not distinguishable from those in the case of Prange v. International Life Ins. Co., 329 Mo. 651, 652, 46 S.W.2d 523, 526, 80 A.L. R. 950, also approved in the last opinion in Howard v. Ætna Life Ins. Co., supra.

■ The agreement of the parties respecting the date of the new policy was not without consideration. The insured's age changed on September 6, 1934. The insurance company placed in effect on January 1, 1935, a new manual of insurance rates. Both events caused an increase in the premium payable by Meyn on the policy in suit. He saved this increase by predating the policy, a sufficient consideration for such a contract under the Missouri cases cited.

■ Nor can we agree with the position of appellees concerning the automatic loan provision. It is stipulated by the parties that the request for the automatic loan provision contained in the application for the policy in suit was placed in the application after it had been signed by the insured. The evidence fails to show whether the inclusion of the words "Automatic Premium Loan Provision" in the application was made with or without the knowledge or consent of the insured. If supposition were permissible, one would be as reasonable as the other. But in either event, we think the provision became a part of the policy. It was clearly expressed in the policy, and the policy also contained the notice, quoted above, that the company, in reliance upon the request in the application, had made effective the automatic loan provision in the policy, and that it would remain in effect until re-

voked by the insured. The insured had agreed in his application that the acceptance of the policy as written would constitute an affirmance by him of the terms and conditions expressed in it. Nevertheless insured was expressly granted, but did not exercise, the right to revoke the automatic loan provision. On the contrary, he accepted the policy without criticism or protest. He continued to pay the premiums thereon for five years without objection to the provision. In the case of his default in three quarterly premiums, he accepted without protest the application of the automatic premium loan provision. On two occasions the matter was called to his attention by letters, in one of which he was advised that the loan value of the policy had been exhausted and that he could not rely on the automatic loan provision for the payment of the next quarterly premium. We think it clear, under controlling Missouri decisions, that even though the automatic premium loan provision had been included in the policy without the consent of the insured, nevertheless, his long retention of the policy and continued payment of premiums without objection, coupled with his acquiescence in the application of the provision in question upon his default in the payment of premiums, must be held to constitute its acceptance by him. Givens v. Ætna Life Ins. Co., Mo.App., 59 S.W.2d 761, 763; Neuner v. Gove, Mo.App., 133 S.W.2d 689, 694; Raker v. Service Life Ins. Co., 226 Mo.App. 1233, 1237, 49 S.W.2d 285, 287; Cleaver v. Central States Life Ins. Co., 346 Mo. 548, 559, 561, 142 S.W.2d 474, 480, 481; Lacy v. American Central Life Ins. Co., 232 Mo.App. 1132, 115 S.W.2d 193, 129 A.L.R. 1094; Christensen v. New York Life Ins. Co., 160 Mo.App. 486, 141 S.W. 6; Lee v. Missouri State Life Ins. Co., 303 Mo. 492, 503, 261 S.W. 83, 86.

The automatic premium loan provision was not without benefit to the insured. Its operation kept in force his policy, including the provisions for disability benefits and double indemnity in the event of accidental death. It saved insured from the risk of becoming uninsurable, since it enabled him to resume the payment of his premiums and to keep the policy in force as long as he thought advisable. On the other hand, the application of the extended insurance provision of the policy resulted in its termination at the end of the period for which the reserve value of the policy was sufficient to maintain it in force. It caused the immediate termination of the double indemnity and permanent disability benefits and exposed the insured to the risk of becoming uninsurable. Wilkins v. Metropolitan Life Ins. Co., Mo.Sup., 165 S.W.2d 858. But it is not within the province of this court to determine whether the contract as made was wise or the reverse. That decision was for the insured in the light of the facts before him at the time the contract was made. To set the contract aside because it now appears that another agreement would have been more beneficial to appellees is to write a new contract in the light of information which the parties to the original agreement did not have and could not have had when they made it.

The judgment of the district court is reversed.