## PENN MUTUAL LIFE INSURANCE COMPANY *vs.* ELLERY B. CRANE.

Worcester.    Oct. 5, 1882. — Jan. 9, 1883.    C. ALLEN, COLBURN & HOLMES,
JJ., absent.

In an action upon a promissory note given to an insurance company in payment
of a premium for a policy of insurance, evidence is admissible that the defend-
ant was induced to make the note by the representations of the plaintiff's agent
that certain persons named and known to the defendant were to be members of
a local board of directors to be organized for the management of the plaintiff's
affairs; and that such representations were false and fraudulent.

If a contract is sought to be avoided on the ground that it was induced by false
and fraudulent representations, the question of the materiality of the representa-
tions is for the court, and not for the jury.

No exception lies to the admission of evidence which is competent for any purpose,
if the excepting party does not ask for an instruction limiting its effect.

In an action on a premium note given to a life insurance company, it appeared
that the company gave a written receipt for the note, by which it agreed to
return the payment if a "local board" was not organized by the company.
*Held*, that evidence was admissible, in defence, of false and fraudulent repre-
sentations as to who should constitute this board and their qualifications.

A question not raised in the court below is not open upon a bill of exceptions.

If a negotiable promissory note is given, in payment of a premium for a policy
of insurance, to an insurance company, which gives to the maker of the note a
receipt acknowledging such payment, and agreeing to return the "payment"
if the company does not do a certain act, the maker of the note is not obliged,
if the company fails to do the act mentioned, to pay the note, and then seek
his remedy on the receipt, but may avail himself of the fact of such failure in
defence to an action on the note.

DEVENS, J.    This is an action to recover the amount of a
promissory note made by the defendant, and payable to the order
of the plaintiff.    The answer sets up two defences: First, that
the delivery of the note was conditional only; and that it was
to be returned in case the local board of directors for the man-
agement of the affairs of this company should not be organized,
which local board was to be composed of twenty members of the
company residing in the county of Worcester, insured in the
plaintiff company in the sum of $10,000 each, and including cer-
tain persons named.    Second, that false representations, among
others that Edward P. Pevey, Emerson P. Knight and Charles
B. Pratt would become and had agreed to become members of
the local board of directors, were fraudulently and falsely made
to the defendant by the plaintiff's agent to induce him to become

a member of this board; that he was induced to give his note and accept a policy of insurance in the company under the promise that his note should be returned in case said local board should not be organized. The answer further avers, that when the representations that Pevey, Knight and Pratt had been secured as members of the local board, or had agreed to become such, were discovered by him to have been fraudulently made, he thereupon offered to give up the policy issued to him, and demanded the return of his note, which had been obtained from him by such false and fraudulent representations.

Upon giving the note in suit, on November 20, the defendant had received from the plaintiff a receipt of the same date for the payment of the premium for a policy to be issued by the plaintiff; and it was added, " This payment will be returned by the undersigned if the policy should not be issued or local board of directors organized by the company." At some time thereafter, apparently upon November 23, the defendant received a policy, and gave an acknowledgment of a loan from the company of $115.54, being a part of the premium, and declared to be a lien upon his policy. Afterwards, on December 12, 1880, according to the testimony on behalf of the plaintiff, the defendant signed an agreement preparatory to the organization of the proposed " local board."

Upon the offer of the evidence on behalf of the defendant, after the plaintiff had proved the note, the presiding justice, against the exception of the plaintiff, ruled that representations made to the defendant that certain persons known to him had agreed to become members of the local board of directors, and had already been secured as such, were such material representations as, if fraudulently made, and relied on by the defendant as an inducement to the making of the note, would constitute a defence under so much of the answer as contained an allegation of fraud; and admitted evidence to show this. This was correct. As the scheme proposed to the defendant was, that, having himself taken a policy of insurance in the plaintiff company, he should be associated with others in a local board of directors who were to have charge of the plaintiff's investments in Worcester county, and to be interested in the business of the company to a certain extent, it was certainly important for the

defendant to ascertain who were to be associated with him in this enterprise. Knowledge upon this subject might make the entire difference with him whether he would embark in it by giving his note and taking out his policy. If it were fraudulently represented that certain persons had agreed to compose a part of this board, with whom for any reason, whether personal acquaintance, a high opinion of their character, credit or capacity, he was willing to be associated, and he had consented to such association, it would be unjust that he should, by such an agreement, be compelled to associate himself with other and different persons. If induced to give his note upon such fraudulent representation, as a portion of his contribution to the enterprise itself, or to the company with which it was connected, it would afford him a good ground of defence thereto while in the hands of him who had thus obtained it.

The contention of the plaintiff is, that this ruling took from the jury the right to say whether a material fraud had been committed on the part of the plaintiff, by limiting its decision simply to the inquiry whether these representations had been falsely and fraudulently made, so that the defendant had been induced thereby to give the note in suit. But it was not for the jury to determine what was the responsibility incurred by the plaintiff, if its representations were fraudulent and false, nor what was their bearing upon the contract. The construction of an oral as well as of a written contract is for the court, which is to determine, when there is no question as to its terms, what is its legal effect upon the duties and liabilities of the parties. Its interpretation and construction involve the determination of the rights and liabilities which it creates. *Short* v. *Woodward*, 13 Gray, 86. *Pratt* v. *Langdon*, 12 Allen, 544. *Globe Works* v. *Wright*, 106 Mass. 207.

The plaintiff contends, on the authority of *Lindenau* v. *Desborough*, 8 B. & C. 586, and *Huguenin* v. *Rayley*, 6 Taunt. 186, that the question whether the fraud was material or otherwise was a question of fact for the jury. This is a misapplication of these and kindred cases in the law of insurance, where it has been held that whether facts concealed or misrepresented increased the risk assumed by the insurer was to be determined by the jury. In such cases, it is always determined by the court,

upon consideration of the contract, what is the character of the concealment or misrepresentation of facts which will invalidate the contract, and for the jury only to ascertain whether, within the definition thus given, there has been a material concealment or misrepresentation of them. In the case at bar, it was for the jury to decide whether the false and fraudulent statements alleged were made, and for the court to determine their effect upon the contract. Evidence was therefore properly admitted to prove these representations to have been made by the plaintiff's agents, and also that they were false and fraudulent.

The principal testimony on this subject came from the defendant himself and his clerk. As recited, much of this evidence does not appear to have been of importance for this purpose, but the plaintiff made no request for an instruction to the jury on most of these conversations, nor did he request that any parts thereof should be struck out as immaterial. To some portions of this evidence he did make specific objections, which we will hereafter consider. But he is not now entitled, except as he thus specifically objected, to any but the general exception made by him which we have already discussed. If after the court had ruled that the alleged fraudulent representations might be proved to have been made, he had wished to object to the mode or to the evidence by which this was sought to be done, he should have called particular attention to it by an objection made at the time. Much goes into the testimony at every trial which is immaterial, and unless a party in some form objects or excepts thereto, the presiding judge has a right to believe that it is not thought of sufficient importance to require notice. No attempt was made to separate the evidence offered at the trial, so as to confine it, or any part of it, to one of the two issues which the jury had before it. If, therefore, admissible upon either issue, it was properly admitted, and we must presume that the just and appropriate weight was given to it.

The plaintiff concedes that evidence was admissible so far as was necessary to determine who were " the local directors " referred to in its receipt. Even if the contract contained in the receipt is to be regarded as embracing the result of all former negotiations between the parties, and thus not to be controlled

by parol evidence, (*Stackpole* v. *Arnold*, 11 Mass. 27, *Finney* v. *Bedford Ins. Co.* 8 Met. 348,) it was competent to show fraudulent statements by which the defendant was induced to make the contract. The evidence that the defendant was unduly solicited, and persistently refused to sign the application for insurance until he was persuaded by the agent employed by the plaintiff, was directly connected with, and a part of the history of, his application, which was signed by him with a statement who he understood the local board of directors would be. It had a tendency to show that only upon that understanding did he enter upon the contract.

The evidence from the defendant's clerk, that the note would be returned if not all right before organization, was a part of the conversations testified to as being always substantially the same, that the local board was to consist of twenty members, each insured for $10,000, &c. It was not introduced to prove any bargain then made, but to define or aid in defining what was the local board referred to in the written receipt. In the same conversation, the witness testified that the names of Pevey and Knight were mentioned as of the directors, and thus supported the theory of the defendant that it had been promised to him that they were to be directors.

The plaintiff further urges, that evidence of the dealings with other parties which the plaintiff had, by which they received policies of insurance upon a less premium than appeared by their policies, and less than the established rates of the company for persons of their age taking policies of the same kind, was inadmissible, upon the ground that its dealings with other persons could not affect the rights of the parties to this suit. As appears by the bill of exceptions, " both parties introduced evidence, without objection, of the representations and statements of the plaintiff's agent relating to the proposed 'local board of directors,' for the purpose of aiding in the interpretation of that expression " in the receipt given by the plaintiff. There was evidence from which the defendant was entitled to claim that to constitute said local board it must have twenty members, each of whom held a policy of $10,000 in the plaintiff company, upon his own life or the life of another, and each of whom paid for it the established rates of the company for persons of his age.

taking policies of the same kind. As the individuals who the defendant offered to show had received policies at less than the established rates were claimed by the plaintiff to be members of the local board, evidence of such dealing of the plaintiff with them was important in showing that no such local board had existed or been organized as the defendant had been promised, and that he was therefore entitled to a return of his note.

The plaintiff contends that, by giving the loan note as heretofore stated, by retaining his policy after the second meeting of that which the plaintiff claims to be the local board, and by acting so far as he did with such board, the defendant waived the fraud of which he now complains. No such point as this was raised at the trial, and it cannot be presented here. As full instructions beside those reported were given, we have no reason to doubt that, if any claim was there made of a waiver by the defendant of any fraud which had been practised upon him, it was properly submitted to the jury.

The plaintiff also asked the following instruction : " The receipt acknowledging payment and the note being negotiable, the contract does not call for a return of the note, as set up in the defendant's answer, but merely gives the defendant a remedy on his contract, if the terms are not fulfilled by the plaintiff." This instruction was properly refused. There had been no payment by the defendant, except by the delivery of the promissory note in suit. In order that the plaintiff should be entitled to collect the promissory note, it was necessary that it should organize the local board of directors, whatever that may have been agreed to be. The note sued on, the loan note and the receipt were all one transaction. Their validity depended upon the existence of this organization. To prove that a note was delivered upon a condition, and that this has not been complied with, is not to contradict its terms. The agreement to return the " payment," contained in the receipt, is an agreement to return the note, unless the condition is complied with upon which its vitality depends. A written paper, which is not to take effect except upon a condition yet to be performed, is not a binding contract. *Faunce* v. *State Assur. Co.* 101 Mass. 279. *Watkins* v. *Bowers*, 119 Mass. 383. *Pym* v. *Campbell*, 6 El. & Bl. 370. *Sweet* v. *Stevens*, 7 R. I. 375.

Nor is it important, as between the promisor and the payee, that the instrument delivered upon any condition essential to its validity is a negotiable instrument. As between them, it is without effect until this be performed. *Bell* v. *Ingestre*, 12 Q. B. 317. *Benton* v. *Martin*, 52 N. Y. 570. The defendant was not therefore obliged to pay the note, and then seek his remedy upon the receipt. *Exceptions overruled.*

*J. Hopkins*, for the plaintiff.

*W. S. B. Hopkins & D. Manning, Jr.*, for the defendant.