## CHARLES M. BECKWITH vs. PATRICK J. RYAN.

First Judicial District, Hartford, October Term, 1895. ANDREWS, C. J., TORRANCE, FENN, BALDWIN AND HAMERSLEY, Js.

A life insurance agent to induce the defendant to insure in his company, represented that the annual premiums required on a ten years' participating endowment policy would be so largely reduced by dividends from surplus earnings, that such policy would be a good business investment for the defendant and would yield him at least six per cent profit; and in this connection falsely and fraudulently asserted as a fact that the history and experience of the company showed that such results had been and could be accomplished; all of which was untrue to the knowledge of the agent. The defendant believed such representations, and in reliance thereon gave the note in suit in payment of the first premium, but subsequently, and as soon as he learned the facts, repudiated the contract and returned the policy for cancellation. In an action on the note by the plaintiff, who had purchased it with full knowledge of all the facts, it was *held* :—

1. That the fact that the defendant might have ascertained the falsity of the statements regarding the amount of dividends paid by the company, from its records, was of no avail to the plaintiff.

2. That the false representations as to the history and experience of the company, were not matters of opinion or ordinary trade talk, but statements upon matters of fact.

There is no rule of law that the evidence of a single witness is insufficient to prove fraud, if denied by the person charged with the fraud. The quality of the testimony given, as well as the number of witnesses produced, must be considered in determining questions of credibility or preponderance of evidence.

The question whether a contract obtained by fraud has been disaffirmed or repudiated in time, is ordinarily one of fact. If the record shows that the contract was disaffirmed on the day the fraud was discovered, it certainly cannot be said, as matter of law, that this was too late.

The appellant requested the trial court to make a finding of facts, and therewith submitted a proposed finding "under the statute and rules of court." *Held* that this request might properly be treated by the trial court as a request for a finding under § 1132 of the General Statutes, rather than a request for an incorporation of facts in the finding under chapter 174 of the Public Acts of 1893.

[Argued October 4th—decided November 1st, 1895.]

ACTION to recover the amount of two promissory notes given for an insurance premium, brought to the Court of Common Pleas in Hartford County and tried to the court, *Walsh, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings of the court. *No error.*

The notes (one for $278.65 and the other for $200) were given by the defendant, payable to the order of P. G. Gorton, special agent, and indorsed to the plaintiff.

The answer set up as a first defense a general denial; and as a second defense, that the notes were obtained by the payee, P. G. Gorton, by means of false and fraudulent representations, and were purchased by the plaintiff with full knowledge of the fraud.

The allegations in respect to the fraud were that Gorton (the payee) solicited the defendant to take out a ten year endowment policy of insurance on his life, in the Ætna Life Insurance Company, and "stated and represented to him that the premium on said policy for the first year would be $478.65, but that for the next following year and the subsequent years the premium would be so reduced by dividends, that the total amount of cash required to carry said policy for the ten years would not exceed $3,000, and that the company had done as well as that in the past; and further stated and represented to the defendant that at the expiration of said ten years, should he live, he would receive back on account of said policy all the moneys which he would have paid as premiums, and at least six per cent interest thereon"; that Gorton agreed to take the notes sued upon in payment of the first premium; that the defendant, relying on the representations of Gorton, executed and delivered the

notes and subsequently received through Gorton a ten year endowment policy on his life ; that said statements and representations were false and fraudulent in all respects; that as soon as defendant ascertained said representations were false and fraudulent he returned said policy to Gorton, and notified him and the plaintiff that he would not pay said notes. The reply denies the allegations of fraud.

In its finding the court below found the facts in detail substantially as alleged in the second defense.

It also appears by the finding that the amount of the dividends which were to reduce the annual premiums, were not stated in the policy ; that the defendant was the only witness produced on his part to prove the false representations, and that Gorton, upon being called as a witness, denied having made such representations ; that the following claims made by the plaintiff were overruled by the court :—

" 1. That the unsupported evidence of the defendant was not sufficient in law to set aside the said contract on the ground of fraud and false representations. 2. That such evidence was wholly insufficient when such fraud and false representations were denied by the agent of the insurance company who is alleged to have made them. 3. That by the express terms of the written contract no statement of the agent could render it invalid. 4. That the representations claimed to be false, related to the cost of insurance, which was expressly stated in the written contract, and concluded the defendant. * * * 5. That such representations, if untrue, were matters of opinion and ordinary trade talk, and would not be a defense to the notes. 6. That the attempt to disaffirm and repudiate the contract was too late. * * * 7. That said policy was a full consideration for the amount of said notes."

The reasons of appeal assigned error in overruling the plaintiff's claims as above stated; and also in the alleged refusal of the court to follow, in its finding, the provisions of "An Act concerning Appeals in Civil and Criminal Cases," passed in 1893.

*Theodore M. Maltbie,* for the appellant (plaintiff).

I. The court erred in its failure to comply with the Act of 1893, respecting the finding. The court, while the finding was still incomplete, understood that the plaintiff sought the benefit of that Act. In this particular, this case differs from *Schlegal* v. *Allerton,* 65 Conn., 260, in which case it is to be assumed, from the opinion, that the trial court was not advised, specifically, that compliance with said Act was desired. The technical objection which the court makes to a compliance with a legal requirement, is based entirely upon an informality which did not "violate any substantial and essential requirement," and should not be sustained. *Styles* v. *Tyler,* 64 Conn., 432, 461, 462.

II. The presumption is that in every transaction the parties have dealt honestly and fairly, and are innocent of any moral or criminal offense. *Michaels* v. *Olmsted,* 14 Fed. Rep., 221 ; *Mead* v. *Conroe,* 113 Pa., 220 ; *Thompson* v. *Nichols,* 53 Ala., 197 ; *Wood* v. *Clarke,* 21 Ill. App., 464 ; *Hill* v. *Reifsuiter,* 46 Md., 555.

III. The court was not justified, even upon the finding as it is, in holding that the defendant's unsupported testimony was sufficient to carry the burden of proof, overcome the presumptions, and warrant a judgment in his favor.

Moreover, the representations found would not avoid the contract, or be a defense to the notes. They were almost entirely promissory in character. But false representations, in order to be available for legal action or defense, must relate to existing or past facts. *Dawe* v. *Morris,* 149 Mass., 188. So far as the representations related to the past history and experience of the company, they were only expressions of opinion, and not available as a defense. *Belcher* v. *Costello,* 122 Mass., 189 ; *Parker* v. *Moulton,* 114 id., 99 ; *Sieveking* v. *Litzler,* 31 Ind., 13. The representations found are of such character as to fall within the rule as to "trade-talk" or "dealers' talk," and do not transcend the license allowed between parties to negotiations. Bishop on Contracts (1887), § 664 ; *Kimball* v. *Bangs,* 144 Mass., 321. The representa-

tions must be such that a prudent man would rely upon them. *Smoke Consuming Co.* v. *Lyford*, (*Ill.*), 1888.

IV. The representations relate to the terms of the contract thereafter to be made; and the complete answer to the defendant's claim is, that having subsequently entered into a written contract, all previous representations, promises, and arrangements were merged therein.

V. The defendant did not attempt to avail himself of the claimed fraud, and rescind the contract promptly. He has had full value for the notes, and, legally and equitably, is bound to pay the amount.

*E. Henry Hyde, Jr.*, for the appellee (defendant).

I. The plaintiff's claim that there was not sufficient evidence to justify the court in finding the fact that the notes were obtained from the defendant by the false and fraudulent representations of Gorton, relates not at all to the burden of proof, but simply as to whether the court below came to a correct conclusion upon the evidence submitted on a pure matter of fact; and that question clearly is not reviewable by this court.

II. The representations did not fall within legitimate "trade talk" or "puffing." Bigelow on Fraud, 466; *Ives* v. *Carter*, 24 Conn., 391.

III. The finding completely answers the claim that the defendant's attempt to repudiate and disaffirm the contract was made too late. The court finds that "the defendant acted diligently and promptly in ascertaining whether the representations of the said Gorton were true or false when his suspicions were aroused, or he had reason to suspect they were not true."

IV. The fact that the insurance policy was in force some little time, does not deprive us of our defense that the notes were procured by Gorton's fraud. *Penn. Mutual Life Ins. Co.* v. *Crane*, 134 Mass., 56; *Hedden* v. *Griffin*, 136 id., 229. The case last cited is on all-fours with the case at bar, and seems to be absolutely decisive of it.

V. The court properly refused to make a finding under the Act of 1893. *Schlegal* v. *Allerton*, 65 Conn., 260.

HAMERSLEY, J. The plaintiff obtained the notes sued upon with full knowledge of the fraud by which the defendant was induced to execute them, and so the second defense is as good against the plaintiff, as it would be against the payee of the notes in a suit brought by him.

The fraud proved is this: The special agent of a life insurance company in soliciting the defendant (who is entirely ignorant of the system and principles of life insurance) to take out a policy in his company, undertakes to satisfy him that a ten-year endowment policy for $5,000 is a good business investment, by which the money paid for premiums will be safely kept and returned at the end of the ten years, with at least six per cent interest; that this result is accomplished by the reduction, after payment of the first premium, of the amount of the annual premium fixed by the policy, through dividends made by the company from its surplus earnings; and for that purpose he represents to the defendant as a fact, that holders of such policies in the past have had their premiums so reduced by such dividends, that the aggregate amount of cash paid by them for premiums, instead of being $4,786.50 (ten times the amount of the annual premium) did not exceed $3,000; whereas in fact the largest dividends before declared by the company had not reduced the premiums on any such policy so that the aggregate amount of cash paid in premiums was less than $4,143.97. In other words, the agent represents that the dividends previously declared by the company had been at the average rate of $178.65 a year, when in fact such dividends had never exceeded the average rate of $64.25 a year. This statement is well known to the agent to be false, is fraudulently made with intent to deceive the defendant, and induce him to take out the policy; it is believed by the defendant and in reliance upon such representation he takes out the policy, and in payment of the first premium gives the agent the notes sued upon.

The defendant might have ascertained the falsity of the statement. He was put off his guard by the agent pretending to figure the result stated from tables furnished by the company for that purpose, a process which, as would seem from the record, the defendant was himself unable to perform. In *Watson* v. *Atwood*, 25 Conn., 313, 320, we held that it was no defense for a man when sued for making a false and fraudulent representation respecting the title of another, by which the purchaser became deceived and defrauded, that by searching the records the purchaser might have discovered the falsity of the representation; and WAITE, C. J., speaking for the court says: "The very object in making those representations, was to throw the purchaser off his guard, and induce him to act upon them without further enquiry. And the very foundation of the plaintiff's claim is, that he believed those representations to be true, and was thereby induced to act as if they were so, and thus became defrauded."

It is of course essential in such case that the person claiming damages for the fraud should in fact have believed the false statement to be true, and in fact have relied upon the statement; and in determining those facts the ease with which the falsity of the statement may be ascertained may become important. In this case the court below has found the principal facts. The record does not show that at the trial any claim was made that, upon the detailed facts as found by the court, the falsity of the representations made was so apparent, or the failure to exercise common prudence and caution was so clear, that as a matter of law the defendant could not rely upon the false representation; no such question of law is raised by the appeal.

Assuming, as we must upon the finding, that the representation was both false and fraudulent, and that the defendant believed it, and in reliance upon it and deceived by it, took out the policy of insurance and gave the notes sued upon in payment of the first premium, there can be no doubt of the right of the defendant to rescind the contract as he did, and to maintain an action of tort for the deceit, or to set up the fraud as full defense to a suit on the notes.

The claim of the plaintiff, that the false representations "were matters of opinion and ordinary trade talk, and would not be a defense to the note," cannot be sustained in respect to the false statement of a fact, as made in this case. *Penn Mut. L. Ins. Co.* v. *Crane*, 134 Mass., 56; *Hedden* v. *Griffin*, 136 id., 229.

The plaintiff's claim that the evidence of a single witness is insufficient in law to prove fraud, if denied by the person against whom fraud is charged, has no foundation. The quality of the testimony given, as well as the number of witnesses produced, must be considered in determining questions of credibility or preponderance of evidence.

The plaintiff's claim that the attempt to disaffirm and repudiate the contract was too late, can hardly raise a question of law, when the finding shows that the defendant returned the policy for cancellation on the day when he first ascertained the falsity of the representations on which he had relied, and that he immediately thereafter notified the plaintiff. Counsel for the plaintiff urged in argument that the defendant did not act with sufficient promptness in ascertaining the falsity of the statement relied on. If in fact the defendant believed the statement, it would hardly be claimed that he was under an obligation to investigate the truth of a statement he believed and acted upon. The considerations urged were entitled to weight with the trial court in coming to its conclusion that the defendant did believe and did act upon the statement; but such conclusion cannot be held erroneous merely because the record shows there were some considerations entitled to weight which might support a different conclusion. It does not appear that the trial court did not give these considerations due weight. And indeed, so far as this claim made in argument raises a question of law, the record does not show that the question was distinctly raised at the trial.

The fifth reason of appeal assigns as error, " the refusal of the court to comply with the statute of 1893, An Act concerning Appeals in Civil and Criminal Cases," and to find facts and correct errors of fact in the finding, as requested

by the plaintiff in his "request for a change of finding of facts."

It appears that the plaintiff's original request for a finding, was so framed that the court might properly treat it as a request for a finding under § 1132 of the General Statutes, and not as a request for the incorporation of facts in the finding under the Act of 1893; and that the plaintiff's "request for a change of finding of facts," filed after the court had made its finding in pursuance of the original request, was not so framed and filed as to bring the appeal within the operation of the later Act. The claim is substantially disposed of by *Schlegal* v. *Allerton*, 65 Conn., 260. It would seem from the record, that the court below did in fact alter its finding, so as to include every fact found by the court which the plaintiff, in his request for a change of the finding, asked to be included for the purpose of properly presenting his questions of law.

The other errors assigned by the appeal present no questions of law.

There is no error in the judgment of the Court of Common Pleas.

In this opinion the other judges concurred.