LIERHEIMER, Appellant, v. MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Respondent.

St. Louis Court of Appeals, January 22, 1907.

1. RESCISSION: Prompt Action: Life Insurance. One who has been induced by fraudulent representations to take out a policy of life insurance differing in terms from the one he contracted for, may rescind the contract for fraud and resist the payment of a note given for a premium, provided he acts promptly upon the discovery of the fraud.

2. ——: ——: Question of Law. What constitutes a reasonable time in such case within which to declare a rescission, is ordinarily a question of fact, though it may become a question

of law if it clearly appears from the insured's own evidence that he did not act promptly.

3. ———: ———: ———. In an action to recover the amount paid by an insured as the first premium on his policy, the plaintiff's own evidence showed that he received the policy on September 23 and that he immediately read the policy and discovered that it was not what he contracted for. He took no action until the 19th day of October following, when he caused a letter to be written to the company repudiating the contract; there was no reason shown why he did not or might not have taken prompt action to notify the company of his intention to rescind. *Held*, as a matter of law his action was not prompt and he could not recover.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

AFFIRMED.

*A. C. Whitson* for appellant.

(1) A party who is induced to take out a policy of insurance by fraudulent representations of the company's agent may rescind the contract and recover back the premium paid or he may retain the policy and have damages for the deceit. Hedden v. Griffin, 136 Mass. 226; Morris v. Hutchkins, 102 Mass. 439. It is also held that he need not return the policy as notice of rejection terminated the obligation of the company and there was nothing to return. Paquin v. Milliken, 163 Mo. 79; Brochus v. Achilling, 52 Mo. App. 81; Liecher v. Keney, 72 S. W. 145; Cotrill v. Krum, 100 Mo. 397; Ins. Co. v. Owens, 81 Mo. App. 201; Van Ravensway v. Ins. Co., 89 Mo. App. 73. (2) The question of reasonableness of time in giving notice of the rejection of a policy of insurance, as not being the one contracted for, is a question of fact for the jury. This is true even where there is no dispute as to the evidentiary facts. It being impossible to lay down a fixed rule on the subject, the question is to be decided from all the facts and circumstances in the case. McCarthy v. Ins. Co. (Minn.), 77 N. W. 426;

Norton v. Gleason, 61 Vt. 474, 18 Atl. 45; Anderson v. Hensler, 6 Wall. 254; McLanahan v. Ins. Co., 26 U. S. 170; Rider v. Wright, 10 La. Ann. 127; Ins. Co. v. Maverick (Tex. App.), 78 S. W. 561; Pennypacker v. Ins. Co., 45 N. W. 408; 16 Am. and Eng. Ency. of Law (2 Ed.), p. 877; Beach on Contracts, sec. 821.   (3) Question of reasonable time for rejection has never been decided as a question of law in this State. Ins. Co. v. Nieberger, 74 Mo. 169; McHoney v. Ins. Co., 52 Mo. App. 94; Clem v. Ins. Co., 29 Mo. App. 674; Steinberg v. Ins. Co., 49 Mo. App. 265. Where the question of reasonable time has been decided as a matter of fact by appellate courts, thirty to sixty days retention of policy has been held not unreasonable. Jones v. Gilbert, 93 Ga. 604, 20 S. E. 48.

*Barclay, Shields & Fauntleroy* and *George Robertson* for respondent.

(1)   It was the duty of insured to read his policy immediately upon its receipt (in fact, that is what he did, and at that time found out it was not what he had bargained for). Steinberg v. Ins. Co., 49 Mo. App. 265; Neiberger v. Ins. Co., 74 Mo. 167; Bostwick v. Ins. Co., 116 Wis. 392.   (2)   It was the duty of Lierheimer to "rescind . . . promptly on the discovery of the fraud." Clough v. Holden, 115 Mo. 359; Estes v. Reynold, 75 Mo. 565. "This rule seems to be that the right to rescind must be exercised promptly." Melton v. Smith, 65 Mo. 324; Robinson v. Siple, 129 Mo. 221; Hart v. Hamlin, 43 Mo. 174. "When the facts are clear, it (what is a reasonable time) is always a question exclusively for the court." Wiggins v. Burkham, 10 Wall. 132; Toland v. Sprague, 12 Peters 336; Schwarzkopf v. Ins. Co., 84 S. W. 353; Hart v. Handlin, 43 Mo. 175; La Force v. Ins. Co., 43 Mo. App. 520; Trask v. Ins. Co., 29 Pa. St. 198 (11 days' delay fatal); Greene v. Ins. Co., 22 Ins. L. Jour. 256 (8 days' delay fatal); Schwarz-

kopf v. Ins. Co., 84 S. W. 353 (24 hours' delay held to be too long to make report required "immediately"). (3) What is a reasonable time may become a question of law. Randolph v. Frick, 57 Mo. App. 405; John v. Agricultural Co., 20 Mo. App. 101; Steam Heating Co. v. Gas Fixtures Co., 60 Mo. App. 154.

STATEMENT.—Plaintiff is a farmer, residing in Audrain county, Missouri. Defendant is a Minnesota corporation, having its home office in St. Paul, in said State, and in 1904 was authorized to do a life insurance business in Missouri. In August of said year, two of its agents, John H. Jones and Jerry Gelvin, canvassed plaintiff for life insurance and induced him to sign an application for what is termed "Twenty Payment Life, Twenty Year Distribution Policy" for five thousand dollars, for the benefit of plaintiff's wife. The annual premium on the policy was $144.65, and the agents induced plaintiff to execute his note for that amount to John H. Jones, to mature January 1, 1905. The note was negotiated by Jones and paid to the holder by plaintiff at maturity. The action is to recover the amount of the note.

The petition alleges, in substance, that the note was procured by the false and fraudulent representations of defendant's soliciting agents, in respect to the contract of insurance and the stipulations they represented the policy would contain. As a special defense, the answer alleges the policy was delivered to plaintiff on September 21, 1904; that he received and accepted it and kept and retained it in his possession without complaint, for an unreasonable time, to-wit, twenty-eight days, and by reason of its retention for an unreasonable time, without objection, the policy became binding on both parties.

At the time plaintiff executed the note, Jones gave him a receipt, showing payment by note of the first premium on his policy to be issued. Accompanying the policy was a special contract, which was delivered with the

policy, the contents of which it is unnecessary to notice in this opinion. There is some evidence tending to show the policy did not contain all the terms and stipulations defendant's agents represented it would, and that it was materially different from the policy the agents sold plaintiff. The policy and special contract were mailed to plaintiff from St. Paul by registered letter. According to the receipt for the letter, it was delivered to plaintiff on September 21, 1904, but according to his evidence and that of the carrier who delivered it, it was delivered two days later, September twenty-third. Plaintiff testified the letter was delivered at his home about 2 p. m., and that he immediately opened it and read the policy and special contract and discovered they were not what he had contracted for. On this feature of the case, the following appears from plaintiff's cross-examination:

"Q. And you say that when you read the policy and special contract you made up your mind it wasn't what you bargained for? A. Yes, sir.

"Q. Have you the luxury of a wife? A. I have.

"Q. Did you talk it over with her? A. Yes, sir.

"Q. And you all discussed it that afternoon? A. We did.

"Q. And that night? A. I don't remember about the night.

"Q. Well, you read it over carefully? A. Yes, sir.

"Q. Studied it out? A. I did.

"Q. And made up your mind it wasn't what you bargained for? A. Yes, sir.

"Q. Well, what did you do with the policy and this special contract when you say that you finished studying it out and made up your conclusion that it wasn't what you bargained for? A. Well, sir; I laid it aside, and the first day I went to town I took it to Mr. Whitson to examine it for me.

"Q. When was the first day you went to town after

that; you say you received it on September 23, 1904. A. Yes, sir.

"Q. When was it you went to the city here to see Brother Whitson? A. Why, it was about the middle of October.

"Q. About the middle of October? A. Yes, sir.

"Q. And you and he looked it over on that visit and on that day that you came to Mexico? A. Yes, sir."

In answer to questions witness stated: Q. "It was not on October nineteenth I came to Mexico. It was about the middle of October, I can't remember the exact date. It wasn't earlier than the fifteenth. When I got through reading the policy, I laid it aside where I thought it would be safe."

"Q. Didn't you ever get it out and read it any of those interesting days between that time and your visit to Brother Whitson's here? A. Why, of course I did.

"Q. You got home at night I suppose and would light a lamp and sit down and read it over and over again? A. No, I wouldn't do that."

In answer to questions witness stated: "I don't remember the times I read it, I read it a good many times. The more I read it, the more I knew it wasn't what I bargained for. I have told all I did in regard to this policy before going to see Mr. Whitson in the middle of October."

"Q. Did you know how to read and write? A. Why of course I did.

"Q. And figure? A. Certainly.

"Q. You have gone to school? A. I have.

"Q. A good bright, intelligent man, ain't you; I mean intellectually, not morally, all of us I am sorry to say are a little weak there, but you have your senses and good understanding, have you not, Mr. Lierheimer? A. I think I have.

"Q. And how old a man are you?  A.  Twenty-five years of age.

"Q. And your business is that of farmer?  A.  Yes, sir."

On October 19, 1904, A. C. Whitson, plaintiff's attorney, wrote J. L. Brininstool, defendant's manager for the St. Louis and Eastern Missouri district, informing him the policy and special contract were not as Jones represented to plaintiff they would be, and that plaintiff refused to accept the policy and demanded a return of his note or the payment of the amount thereof, and informed Brininstool the policy was in his (Whitson's) hands to be sent wherever Brininstool should direct. On the twenty-first of the same month, Brininstool acknowledged the receipt of this letter, and stated he would write Jones regarding his (Whitson's) letter and communicate with him as soon as he heard from Jones.  Other correspondence took place between Whitson and Brininstool, in respect to the matter, and Brininstool visited plaintiff and made an unsuccessful effort to induce him to change his mind and keep the policy.  On November 14, 1904, the policy and special contract were forwarded to Brininstool by registered letter.  He refused to receive the letter and it was returned to Whitson at Mexico, Missouri.  Whitson, on the thirtieth of the same month, forwarded the policy and special contract by registered letter, to defendant's home office at St. Paul and received a receipt showing the letter was delivered.  Nothing more has been heard of the policy.

. At the close of the evidence the court, at the request of defendant, instructed the jury that plaintiff could not recover, and under the instruction the jury returned a verdict for defendant.

BLAND, P. J. (after stating the facts.)—1.  Plaintiff was evidently denied a recovery upon the ground that he did not act with sufficient promptness in notifying defendant that he repudiated the contract of insur-

ance. Until there was a rescission of the contract of insurance, plaintiff had no cause of action, either for a surrender of the note or for its value; and if he was defrauded and wished to exercise his right to rescind the contract on account of the fraud, the law required that he act promptly on the discovery of the same, in giving notice of his rescission. [Clough v. Holden, 115 Mo. l. c. 359, and cases cited.] Quoting from Fry on Specific Performance of Contracts (2 Ed.), secs. 703-4, SHERWOOD, P. J., in Taylor v. Short, 107 Mo. l. c. 392-3, 17 S. W. 970, said: "The right to rescind a contract must be exercised so soon as any one of the events which give rise to the right happens or is known to the person entitled to it. Thus, in the case of a transaction grounded on fraud, the party deceived must, on the discovery of the fraud, elect to rescind or to treat the transaction as a contract."

In Lewis v. Land Company, 124 Mo. l. c. 687-8, 28 S. W. 324, speaking of the rescission of contracts by fraud, the court said: "The rule in such cases is that upon discovery of the fraud, *promptly* the party must repudiate the fraud and rescind or offer to rescind all the instruments and obligations which bind him to the obnoxious transaction," citing Estes v. Reynolds, 75 Mo. 563; Hart v. Handlin, 43 Mo. 171; and Taylor v. Short, supra. The latter case is approvingly cited in Robinson v. Siple, 129 Mo. l. c. 222, 31 S. W. 788, and in Johnson-Brinkham Com. Co. v. Railway, 52 Mo. App. 407; and Chas. R. Kirk. & Co. v. Seeley, 63 Mo. App. 262.

2. Conceding that plaintiff had the right to rescind the contract for fraud, did he exercise the right with sufficient promptness after he discovered the fraud, and was this question one of fact for the jury, or a law question?

In Manufacturing Co. v. Troll, 69 Mo. App. l. c. 480, this court said: "What constitutes reasonable time within which to declare a rescission is ordinarily a ques-

tion of fact.   It may, however, be a question of law if the circumstances are such as to demonstrate unreasonable delay."   And in Publishing Co. v. Hull, 81 Mo. App. l. c. 280, we said, that "where the delay (to declare a rescission) is for such period as to be unquestionably without cause, the court may so declare as a matter of law."

In American Insurance Co. v. Neiberger, 74 Mo. 167, Neiberger was sued on a note given for the premium on a fire insurance policy.   He defended on the ground that the policy was procured by fraud and that he had repudiated the contract of insurance and gave notice of his election to rescind.   At page 173, the court said: "The policy in this case was issued on the twenty-fifth day of January, 1875, and it was not rejected by the defendant until May 10, 1875.   If the policy was received by the defendant soon after the date on which it purports to have been issued, we think he waited too long to elect whether he would receive the policy without the stipulation in regard to cancellation, or refuse to accept it because it did not contain such stipulation.   After such delay, he will be deemed to have accepted the policy as issued."

In McKeen v. Bank, 74 Mo. App. 281, the plaintiff's pass-book was balanced and it and his cancelled checks returned to him on April fifteenth.   He made no examination of the book and cancelled checks until the twenty-second day of the following month, when he discovered a forged check for four hundred and eighty dollars among the cancelled ones.   The defendant had a rule requiring its depositors to notify it of errors, etc., within ten days after their pass-books were balanced and returned to them.   The suit was to recover the four hundred and eighty dollars represented by the forged check. We held: "The retention of the account beyond a reasonable time by the customer without objection, where there is no dispute as to the time of the rendition of the

account, and the time of making the objection, the rea-
sonableness of the time in which the customer should
make his objection is a question of law for the court,
and not a question of fact to be submitted to the jury
by hypothetical instruction. [Powell v. Railroad, 65
Mo. 1. c. 662; Sherman v. Sherman, 2 Vern. 276; Comer
v. Way, 107 Ala. 300; s. c., 54 Am. St. Rep. 93; Aymar
v. Beers, 17 Am. Dec. 584.]"

In Wiggins v. Burkham, 77 U. S. 129, it was held:

"An account rendered, and not objected to within a
reasonable time, is to be regarded as admitted by the
party charged, to be *prima facie* correct.

"If certain items in an account under such circum-
stances are objected to within a reasonable time, and
others not, the latter are to be regarded as covered by
such an admission.

"What is to be regarded as a reasonable time is,
when the facts are clear, a matter of law. Where the
proofs are conflicting, it is a mixed one of law and fact;
and in such cases the court should instruct the jury
upon the several hypotheses of fact insisted on by the
parties."

In State Life Ins. Co. v. Schwarzkoff, 84 S. W. 353,
we held: "Where plaintiff required defendant, its gen-
eral agent, to make an 'immediate' report on policies he
was holding beyond the period authorized by his con-
tract, which provided that it should terminate imme-
diately on defendant's failure to fulfill its conditions,
defendant, though entitled to a reasonable time to com-
ply with the demand, was not entitled to twenty-four
hours therefor, it appearing that the report could be
made in much less time."

In Jones v. Gilbert, 93 Ga. 604, cited and relied on
by plaintiff, the court, at page 606, said: "There was
no real contest in this case upon the question as to
whether or not Gilbert had, by the mere lapse of time,

lost his right to return the policy " (claimed not to be the kind of policy the company agreed to furnish him).

In Rider v. Wright & Marshall, 10 La. Ann. 127, also cited by plaintiff, a "slave was sold on the thirteenth of December, 1851, and died on the twenty-first of September, 1852. Plaintiff sued to recover the purchase money, and alleged that a few days after the purchase, he discovered that the slave was afflicted with serious redhibitory vices, etc. *Held*: Plaintiff should not have kept the slave for months without making at least an effort to procure an amicable rescission of the sale."

In Norton v. Gleason, 61 Vt. 474, cited by plaintiff, "the defendant gave his note for the premiums on certain life insurance policies June 8th. June 20th he rescinded the contract, alleging misrepresentation on the part of the agent. *Held*, not permissible to show that June 11th he was examined by a physician for other insurance, as tending to prove that he wished to avoid these policies not for any misrepresentation, but that he might try some other company.

"Defendant claimed to rescind this contract because certain estimates, which were represented to be those of the company, were not in fact. He learned of the fraud June 11th, wrote a letter of inquiry to the company June 12th, and, not receiving any reply to that letter, rescinded the contract June 20th. *Held*, that it was a question for the jury, under proper instructions, whether the rescission was seasonable."

And in McCarty v. Life Ins. Co., 77 N. W. (Minn.) 426, relied on by plaintiff, the facts were as follows:

"One Wood was the agent of the defendant to solicit and take applications for life insurance, and, if accepted by the defendant, to deliver the policies therefor and collect the premiums. Wood solicited the plaintiff to take a policy, stating to him the character and terms of the policy which he was 'selling.' Plaintiff agreed to take a policy of $5,000, of the kind and terms described by

Wood. Thereupon Wood filled out an 'application,' and presented it to plaintiff for his signature; falsely representing to him that it was an application for a policy of the character and terms which he had described. Plaintiff signed the application, without reading it, in reliance upon these representations of Wood. When the policy arrived, Wood delivered it to plaintiff, falsely representing to him that it was of the character and terms previously described and agreed upon. In reliance upon these representations, plaintiff accepted and receipted for the policy without reading it, and gave his negotiable promissory note for the premium. If he had read the application and policy, he would have discovered the character and terms of the policy and the falsity of Wood's representation. He laid the policy away, and did not examine or read it until some six weeks afterwards, when, upon reading it, he discovered that its terms and conditions were materially different from what they had been represented to be by Wood. He thereupon promptly returned the policy to the defendant, with the request that it be cancelled and his note returned; assigning as the reason for his request the false representations made by Wood. The defendant refused to cancel the policy or return the note, but shortly after sold and transferred the note to a third party, who brought suit on it, in which he established that he was an innocent indorsee for value before maturity, and consequently recovered judgment for the amount which plaintiff was compelled to pay. Plaintiff thereupon brought this action to recover the amount of the note.

. . .

"Counsel's second contention is that, even if plaintiff had originally a right to rescind, he had lost it by his subsequent conduct in retaining the policy an unreasonable length of time before discovering the difference between the policy as it was and as it had been repre-

sented to be by Wood. It is not claimed that there was any unreasonable delay after plaintiff actually discovered the fraud, but the claim is that, if he had exercised reasonable diligence in examining his policy, he would have discovered it much sooner. The rule, as generally laid down in the books is, that the right of rescission accrues only after discovery of the fraud, and that delay is not imputable against the party defrauded, until he makes that discovery. But we have no doubt that there may be cases where the party is so grossly negligent in failing to use means of knowledge within his possession, which he was bound to avail himself of, that delay would be imputable to him, even before he actually discovered the fraud. Hence, perhaps, a more accurate statement of the rule is that delay is not imputable to the party defrauded until he has sufficient knowledge of the fraud to make the delay material, or such means of knowledge as he was bound to avail himself of. [Leake, Cont., 394; Brown v. McClintock, L. R. 6 H. L. 456.] As in the case of alleged negligence, the evidence may be so conclusive as to render the question one of law, as to whether the party attempted to rescind within a reasonable time after he discovered the fraud, or after he was bound to discover it; but ordinarily this would be a question of fact for the jury."

The rule is thus stated in 16 Am. and Eng. Ency. of Law (2 Ed.), p. 877: "When a person has been induced to take out a policy of insurance by the false representations of the agent of the insurer, in respect to matters affecting the interest of the assured under the policy, the assured may, upon discovering the fraud, repudiate the contract and recover back the premiums paid, or set up the facts as a defense to an action on a note given therefor. The right to repudiate the contract, however, must be exercised within a reasonable time. What is a reasonable time is of course a question of fact for the jury." In support of the statement

in the text that "what is a reasonable time is of course a question of fact for the jury," the case of Beckwith v. Ryan, 66 Conn. 589, is cited in a footnote. What is said in the case is this: "The question whether a contract obtained by fraud has been disaffirmed or repudiated in time, is ordinarily one of fact. If the record shows that the contract was disaffirmed on the day the fraud was discovered; it certainly cannot be said, as a matter of law, that this was too late." This text is not supported by any cases cited by counsel, or by any that has come under our notice, and is opposed by the decisions of the appellate courts of this State and others. It seems to us that where the evidence, in respect to the delay comes from the party asserting the right to a rescission, and it clearly appears from his own evidence that he did not act promptly, and there is nothing to show why he did not or might not have taken prompt action to notify the opposite party of his intention to rescind, there is no question of fact for the jury to pass on, and it is the duty of the court to declare on the admitted facts, that there was unreasonable delay. Plaintiff's own evidence shows that he received the policy and special contract, on September twenty-third, from St. Paul, Minnesota; that he immediately read the policy and re-read it on the same day and discovered on his first reading that it was not the policy he had contracted for, and that each re-reading confirmed and strengthened this conviction. Instead of acting promptly to notify defendant company of his repudiation of the contract, he put the policy away in a drawer and took no action until the nineteenth day of the following month, when Whitson, plaintiff's attorney, by his direction wrote Brininstool to the effect that plaintiff repudiated the contract. This was not prompt action, and we think the learned trial judge correctly directed a verdict for defendant. The judgment is affirmed. All concur.