ROBERTSON et al., Respondents, v. COVENANT MUTUAL LIFE INSURANCE COMPANY, Appellant.

St Louis Court of Appeals, February 19, 1907.

1. **EQUITY: Rescission of Contract: Jurisdiction.** In an action to cancel a contract of insurance where it was alleged that a contract, supplementing the policy of insurance and stating conditions on which it was issued, was not the contract agreed upon, but a different one substituted for the real contract without the knowledge or consent of the insured and that it was procured by fraud and imposition practiced by the agents of the insurer, a court of equity had jurisdiction to entertain the case.

2. **CONTRACTS: Rescission: Life Insurance.** Where the insured were induced to take out policies and become liable for premiums upon an agreement that the insurance company would employ the insured to assist in procuring other policies, whereby a part of their premiums would be earned, a violation of that provision of the agreement which was an essential part of the contract entitled the insured to relief by a rescission of the contract.

3. **LIFE INSURANCE: Agency: Authority of Agent to Make Contract.** An insurance company entered into a contract with the insured agreeing that the insurer should constitute a local board for the promotion of the insurance company's business, whereby the insured should earn part of their premiums, and where the agents who procured the policies had authority to establish local boards, the fraud and deceit of such agents practiced upon the insured in the formation of such boards was attributable to the insurance company and made it liable so that the contract of insurance could be rescinded for such fraud.

4. **LACHES: Estoppel: Insurance.** It is the duty of the insured upon receiving his policy to examine it and see if it contains the contract as made; if he neglects to do so for a reasonable time, he will be deemed to have accepted the policy. Where a written contract accompanying the insurance policy was received and retained by the insured for a year without complaint, he is estopped from afterwards claiming that such writing failed to contain the terms of the contract agreed upon.

Appeal from Audrain Circuit Court.—*Hon. E. M. Hughes*, Judge.

REVERSED.

*P. H. Cullen* for appellant.

'(1)   There is no right to relief in equity pleaded in plaintiff's bill or established by the proof. The most that can be said of the pleading and proof is that it is shown that Brown & Weber entered into an oral contract with plaintiffs; that it was agreed that said oral contract should be reduced to writing; that it was not reduced to writing, and defendant violated the terms of the oral agreement.   Therefore, if plaintiffs have any cause for action it is an action at law for the breach of the alleged oral contract and the doors of equitable relief are closed to them.   The bill is without equity and should be dismissed.   18 Ency. of Pl. and Pr., p. 806; Gotcher v. Haefner, 107 Mo. 276.   (2)   The only object of the bill is to recover damages sustained by reason of the alleged fraud of the defendant, and for this reason also the bill is without equity.   To hold otherwise deprives the defendant of its right of trial by jury.   Coe v. Turner, 5 Conn. 86; Edwards v. Hanna, 5 N. J. Marsh (Ky.) 18; Thias v. Siener, 103 Mo. 314.   (3)   To sustain an action in equity for the rescission or cancellation of a contract it is not sufficient to allege and prove that defendant has failed to perform his part of the contract, but it must be alleged and proved that the plaintiffs were induced to enter into the contract by false representations, and in the case at bar there is an entire failure to allege or prove any false representations within the meaning of the law.   Balue v. Taylor, 136 Ind. 368; Birmingham v. Land Co., 93 Ala. 549.   (4)   The law is well settled that a representation, promise or assurance to form the ground of an action or defense where one has been induced to act by reason thereof, should be of some

fact then existing or which had previously existed and not merely a promise as to the future conduct or intentions. In this case the pleadings fail to allege and the proof fails to show any misrepresentation of a past or present fact, but on the contrary show a promise as to future conduct or intentions, and therefore, are insufficient to authorize the relief prayed. Morris v. McMahan, 75 Mo. App. 497; Bullock v. Wooldridge, 42 Mo. App. 356; 14 A. & E. Ency. of L. (2 Ed.), 47. (5) The plaintiffs having received the contract which they now claim was different from the alleged oral contract on January 3, 1899, and having retained it for more than twelve months without complaint as to its subject-matter, is conclusively bound by its terms and conditions. It was their duty to read it, and whether they read it or not, they are charged under the law with knowledge of its contents, and not having made seasonable objection to it but retained it in silence and held their several policies as claims against the defendant, it does not now lie in their power to say it is not their contract. Insurance Co. v. Neiberger, 74 Mo. 167; McHoney v. Insurance Co., 52 Mo. App. 94; Steinberg v. Insurance Co., 49 Mo. App. 265; Railroad v. Bellewith, 55 U. S. App. 119, 28 C. C. A. 361, 83 Fed. Rep. 440; Green v. Railroad, 35 C. C. A. 70, 92 Fed. 876.

*George Robertson* for respondents.

(1) The plaintiffs having been induced by the same fraudulent representations made by the same agents at the same time to induce them to join in the same contract, may join in a bill for the benefit of themselves to set aside the contract and recover the money obtained by the fraud. Modern Eq. Prac. (Beach), sec. 67; Bosher v. Richmond & H. L. Co., 16 S. E. 360; Chester v. Hilliard, 36 N. J. Eq. 313; Sherman v. Stove Co. (Mich.), 48 N. W. 537; Mfg. Co. v. Swift (Mich.), 50 N. W. 1001. (2) The agents, Webber & Brown, had un-

limited authority, for the company agreed with them that it should not terminate the agency for a violation of the agreement by the agents which it made with them. The company cannot accept the benefits of the agency—money fraudulently received, and repudiate the agent's authority. The company retained the money after it had been notified of the fraud of its agents. (3) The principal is liable for the wrongful, fraudulent, or deceitful conduct of the agent committed within the scope of his authority. Mechem on Agency, sec. 739; Johnson v. Barber, 5 Gilm. (Ill.) 425; Rennolds v. Witte, 13 S. Car. 5; Johnson v. Barber, 50 Am. Dec. 419; Greer v. Bank, 128 Mo. 559; State v. Armstrong, 106 Mo. 395; Beitinger v. Winkler, 8 Mo. App. 562.

NORTONI, J.—At a previous term of the court, some time since, this case was presented and argued and upon submission, after full consideration, the judgment of the circuit court was reversed and the following opinion of the court was given by Presiding Judge BLAND, in which all of the members of the court as then constituted, concurred. Afterwards a rehearing was granted and the case has been ably presented and argued a second time. Upon this second submission and argument, we have given the matter a further full and careful examination, which has resulted in the adherence of the court to the opinion heretofore announced. The statement of facts and the opinion of the court as heretofore prepared by BLAND, P. J., is as follows:

"The action is a bill in equity to cancel a contract and for the recovery of premium money paid on life insurance policies. The facts are that Brown and Weber, soliciting agents of the defendant, represented to plaintiffs that they had authority as such agents to establish what they termed 'local boards' for promoting defendant's insurance business upon certain terms and conditions. The conditions finally agreed upon between

plaintiffs and Brown and Weber were that if plaintiffs and others in Audrain county, Missouri, would take out life policies of insurance, aggregating forty thousand dollars, that the plaintiffs should become a local board and after the formation of the board, defendant would put into their district (Audrain county), an experienced soliciting agent who, with the assistance of the local board, would procure life insurance from persons in the district from one hundred and ninety thousand dollars over and above the amount of policies held by members of the board, and as much more as could be procured by a thorough canvass of the county; that of the premiums (of fifty per cent to the agent) on insurance so taken, plaintiffs should have one-half and ten per cent of all renewals of such insurance after the first year, which should go to reduce or entirely cancel the premiums to become due on plaintiffs' policies after the first year.

"Plaintiffs, in pursuance of this arrangement, took out policies as follows: George Robertson, two policies for five thousand dollars each; Lupton, Rodes, Barth and Daniel each a policy for five thousand dollars and each of the assured, except Robertson, gave his individual note, payable to Brown and Weber, for the amount of the premium in his policy for one year.

"The premium on Robertson's policies was three hundred and eighty-seven dollars and ten cents, on Rodes' one hundred and twenty-five dollars, Lupton's, one hundred and fifty-three dollars, Barth's one hundred and fifteen dollars and twenty-five cents, and on Daniel's one hundred and seventy-one dollars and ten cents.

"At the time the notes were given and the policies were issued Brown and Weber represented to plaintiffs that they had secured the forty thousand dollars of insurance on the lives of persons in Audrain county necessary to authorize the plaintiffs to act as a local board. The notes were made payable to Brown and Weber and

delivered to them with the distinct understanding that they should not be transferred but should be sent to the defendant company and retained by it until they became due.

"A written contract was then presented by Brown and Weber to be signed by the plaintiffs which embraced many of the stipulations agreed on, stipulations that were not agreed on, and omitted that part of the agreement which provided that the defendant should furnish an experienced agent to canvass the territory for insurance and the plaintiffs should have one-half of the commission on premiums for such insurance and ten per cent of all renewals thereof. This contract was read over by plaintiffs in the presence of Brown and Weber and it was agreed that the objectionable portions thereof should be erased and that the stipulations of the contract not set forth in the writing should be written into it before it would be signed by the defendant company. Brown and Weber represented that they had no authority to sign the contract and that it would have to be forwarded to the home office of the company at St. Louis to be signed by Mr. Cerf, the vice president of the company, and assured the plaintiffs that the erasures agreed upon would be made and the terms of the contract as agreed upon that were not in the writing would be written into the contract by Mr. Cerf and signed by him and then be returned to George Robertson, one of the plaintiffs. On the faith of these representations, plaintiffs signed the contract in the condition it was in and turned it over to Brown and Weber who forwarded it to Mr. Cerf at St. Louis. Mr. Cerf signed the contract without making the changes agreed upon and returned it to plaintiff Robertson who, without examining it or reading it over, laid it away in his safe where it remained for about a year without examination by Robertson or any of the plaintiffs.

"Plaintiffs received their policies before the contract

was returned.  Brown and Weber discounted the notes in a bank at Mexico before their maturity and ceased thereafter to give the insurance business of defendant in Audrain county their personal attention.  The defendant did not send an agent to Audrain county to canvass for insurance and denied the authority of Brown and Weber to make the contract which they did make with the plaintiffs.

"On the trial, defendant introduced in evidence the contracts which they had with Brown and Weber, appointing them general soliciting agents, signed by Cerf as vice-president of the defendant company.

"Robertson testified that he knew the handwriting of Cerf from correspondence which he had had with him and that when Brown and Weber came to Mexico and entered into negotiations with plaintiffs they exhibited a paper signed by Cerf authorizing them to form local boards.  The other plaintiffs testified to seeing and reading the paper and that it purported to be signed by Cerf but they were unable to testify whether or not the signature of Cerf was genuine.

"The only evidence offered by defendant to contradict this was the contract of the company with Brown and Weber and the evidence of Mr. Wilkerson, president of the company, who testified that if there was any such contract as testified by plaintiffs, he knew nothing about it.  On cross-examination, he testified that Cerf had charge of all the agents and that he was not familiar with that department of the company's business.

"Plaintiffs retained their policies until after they were forfeited for non-payment of the second year's premiums and at no time offered to return them to the defendant.

"Plaintiff George Robertson, a practicing lawyer, was the moving spirit on the part of all the plaintiffs in procuring the policies and making the contract with Brown and Weber.

"A subpoena to the defendant to produce the contract authorizing Brown and Weber to establish local agencies was served upon it. Instead, if any such contract was in existence, defendant produced the contracts of Brown and Weber above alluded to.

"A few months after the transaction, Robertson, on behalf of himself and the other plaintiffs, made complaint to the defendant on account of its failure to comply with the contract by sending a canvassing agent into Audrain county to solicit insurance. Correspondence in reference to the subject continued between Robertson and the defendant up to a short time before the beginning of the suit, but it is not of sufficient importance to be set forth in this opinion. The tenor and purport of it is that the plaintiffs and the defendant had a different understanding as to what the terms of the contract were.

"Judgment was rendered for plaintiffs from which, after unavailing motions for new trial and in arrest, defendant appealed.

"1. Defendant contends that there is no equity in the bill and that plaintiffs' cause of action, if any they have, is at law. This view of the case leaves out of sight the fact that plaintiffs have no cause of action whatever on the contract in the form in which it is written for the reason that no breach of that contract is alleged or proven. To state a cause of action it was essential to allege such facts as would authorize a court to set aside the written contract. This the plaintiffs have done by alleging in their bill that the contract agreed upon is not the contract found in the writing and that its substitution for the contract agreed upon was without their knowledge or consent and that it was procured by fraud and imposition practiced upon them by Brown and Weber as the authorized agents of the defendant. Jurisdiction to deal with this state of facts is vested solely in a court of equity.

"2. Defendant contends that plaintiffs got all that

they paid for; that they were insured for one year and that this insurance furnished the consideration for the notes. The contract is not a severable one. Insurance was not all of the contract and, especially was not insurance for one year the consideration for the contract. The policies were twenty-year policies. The annual premiums were a considerable sum on each of these policies. An inducement to take these policies and to become liable for these premiums was that plaintiffs might be able to earn the whole or the greater part of the premiums through their acquaintance with insurable persons in Audrain county and by introducing individuals who might be desirous of taking insurance to an agent to be furnished by the defendant and by recommending the defendant company to their friends and acquaintances who might desire life insurance or be prevailed upon by an experienced agent to take policies. The violation of any of the essential parts of the contract was a violation of the whole and entitled the plaintiffs to relief.

"3. It is strongly contended by defendant that there is no evidence of the authority of Brown and Weber as its agents to make the contract alleged to have been made by them. The evidence of Robertson is that he read a paper giving Brown and Weber authority to establish local boards and that it was signed by Cerf, vice-president of the company. Other witnesses testified to seeing the written authority purporting to be signed by Cerf. Defendant was notified to produce the paper; instead it produced a contract with Weber appointing him agent for the purpose of canvassing for 'life insurance on the lives of individuals and of performing such other duties in connection therewith as may be required by the officers of the company' and provided by the eighteenth section of the contract that his agency 'shall not be terminated by the party of the first part (the insurance company) for the violation of this agreement by the party of the second part' and the contract with Brown

of the same tenor and effect except article eighteen is not found in the Brown contract and he agreed to work for a less commission than did Weber. Cerf was not a witness as he might have been. He could have testified of the truth whether or not he authorized Brown and Weber to make the contract. His failure to so testify is a circumstance strongly corroborating the evidence of Robertson and others that Brown and Weber were expressly authorized by the defendant to establish local boards. But we think this question is put at rest by the written contract signed by Cerf, vice-president of the company, and forwarded to Robertson, wherein it is expressly agreed that the plaintiff should constitute a local board for the promotion of defendant's insurance business. It being within the scope of the authority of Brown and Weber as agents of defendant to establish a local board at Mexico, the defendant is liable for any fraud and deceit which they practiced on the plaintiffs in the formation of the board. [Greer v. Bank, 128 Mo. 559; Knowles v. Bullene & Co., 71 Mo. App. (K. C.) 341; Construction Co. v. Railroad, 71 Mo. App. (St. L.) 626; Veitinger v. Winkler, 8 Mo. App. 562; Wharton on Agencies, sec. 164, 540.]

"4. Robertson received the contract about January 3, 1899. He did not read or examine it for a year or more after it was received. For this neglect it is claimed that the plaintiffs are estopped to deny that it is not their contract and American Insurance Company v. Neiberger, 74 Mo. 167; McHoney v. The German Ins. Co., 52 Mo. App. (St. L.) 94; Steinberg v. The Phoenix Ins. Co., 49 Mo. App. (St. L.) 265, and other authorities on the same line are cited in support of this contention. In all of the above cases it was held that it was the duty of the insured on receiving a policy of insurance to examine it and see if it contained the contract as made; that if he neglected to do this for an unreasonable time he would be deemed to have accepted the policy as writ-

ten. In Chicago, St. Paul, etc., Ry. Co. v. Belliwith, 55 U. S. App. l. c. 119, speaking of the duty of the party to a written contract to read it and to inform himself of its contents, the court said: "If one can read his contract, his failure to do so is such gross negligence that it will estop him from denying it, unless he has been dissuaded from reading it by some trick or artifice practiced by the opposite party." In Green v. Chicago & N. W. Ry. Co., 92 Fed. App. l. c. 876, substantially the same language is used. No dissuasion or artifice was practiced by the defendant to prevent Robertson or any of the plaintiffs from reading the contract after it was signed by Cerf and returned. In the light of the evidence that the plaintiffs signed the contract with the understanding that certain parts thereof were to be erased and certain insertions were to be made by Cerf before he would sign and return it to them, it is strange that Robertson did not read the contract and see if these changes had been made. His neglect to do so and his failure for a year or more to read the contract was gross negligence.

"By retaining the contract and policies without objection for an unreasonable time after their delivery and by enjoying during all that time the assurance secured by the policies, plaintiffs, both upon reason and authority are deemed to have accepted the contract as written and are estopped to deny that it is not their contract. And having, for a full year, failed to make complaint, thereby acquiescing in the continuance of the expense and risk to defendant of carrying the policies, they were guilty of such laches as would make it inequitable to require the defendant to refund the premium money. It follows that the judgment should be reversed. It is so ordered. *Barclay* and *Goode, J.,* concur."

For the reasons stated in the above opinion, the judgment will be reversed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.